# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2208

_____

| | |
|---|---|
| Kevin L. Nitsche, | * |
| | * |
| Appellant, | * |
| | *  Appeal from the United States |
| v. | *  District Court for the |
| | *  Western District of Missouri. |
| CEO of Osage Valley Electric | * |
| Cooperative, | * |
| | * |
| Appellee. | * |

_____

Submitted: February 15, 2006
Filed: May 8, 2006

_____

Before RILEY, HEANEY, and MELLOY, Circuit Judges.

_____

RILEY, Circuit Judge.

Kevin L. Nitsche (Nitsche) appeals the district court's[1] grant of summary judgment in favor of Osage Valley Electric Cooperative (Osage Valley) on Nitsche's sexual harassment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.010 to 213.137. We affirm.

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

## I.    BACKGROUND

In April 1979, Nitsche began working for Osage Valley, a cooperative providing electric services in rural Missouri. Nitsche initially worked on Osage Valley's brush crew and later joined the line crew, where he ultimately became a line foreman. Nitsche complains that throughout his employment he was subjected to unwanted sexual banter by another line foreman, Steven Hanson (Hanson), who had seniority over Nitsche but did not have authority to fire Nitsche, reduce his salary, or control his hours. The sexual banter was about females, and Nitsche found Hanson's banter highly offensive.

As examples of Hanson's conduct, Nitsche cites several incidents occurring over the course of approximately twenty years. In 1982, while Nitsche, Hanson, and another Osage Valley male employee were traveling in a work truck, Hanson asked Nitsche how many wheels a menstrual cycle had. Nitsche answered "three," prompting Hanson to tease Nitsche and later repeat the incident to other male coworkers. About fifteen years ago, another incident occurred while Nitsche and several other Osage Valley employees were playing poker at Hanson's home. Hanson played a pornographic video for those in attendance, which upset Nitsche and caused him to leave Hanson's home. On multiple occasions, Hanson told Nitsche he would need to have a Pap smear. Frequently over the years, Hanson examined *Playboy* magazines in Nitsche's presence and encouraged Nitsche to look at the pictures of naked women portrayed in the magazines. Nitsche had never seen a *Playboy* or other similar magazine before. On one occasion when a couple of pages of one magazine were stuck together, Hanson told Nitsche, "look it here, you stuck the pages together. You shot your wad." Nitsche also blamed Hanson for putting snakes and mice in Nitsche's lunch box, which Nitsche's wife discovered later when cleaning the lunch box. In October 2001, Hanson posted a picture of a donkey over Osage Valley employee Bobby Fennewald's engagement picture, which was located on a company bulletin board, along with a drawing of a penis.

According to Nitsche, neither Hanson nor any other Osage Valley employee ever asked Nitsche to engage in any sexual activity. However, on two or three occasions five to ten years before, Hanson stuck a shovel between Nitsche's legs and rubbed Nitsche with it. Hanson also called Nitsche "stub" because of the size of Nitsche's fingers and remarked a man with stubby fingers has a short penis. In Nitsche's presence, Hanson referred to female genitalia using crude slang names, pretended he had a pubic hair in his mouth, and made lewd comments concerning women. Nitsche testified Hanson liked to embarrass him in front of other people and continued to make inappropriate comments because Hanson was "trying to keep [Nitsche] on edge" and knew the comments bothered Nitsche. Nitsche admitted he laughed at some jokes told by Hanson or other Osage Valley employees (but not the "dirty jokes") and "like[d] it when people pick on [him]." Although Hanson also told jokes to women, he told off-color jokes or jokes with a sexual connotation only to men and would cease telling such a joke if a woman came near.

In February 2001, Hanson and a few other employees authored a belittling poem[2] implicitly referencing Nitsche, who had spilled a container of molasses from his truck onto the road. Someone placed the poem on a company bulletin board. Nitsche reported this incident to Daryl Veatch (Veatch), Osage Valley Assistant General Manager, and also to Osage Valley's then-president Mickey Chapman, who advised Nitsche that concerns of a personal nature should be brought to the attention of Jon McClure (McClure), Osage Valley's General Manager and Chief Executive Officer. Nitsche did not immediately speak to McClure about the poem.

On December 7, 2001, Nitsche threatened Osage Valley employee Clint Bennett (Bennett) at work and questioned Bennett on why he told another coworker of

---

[2]The poem read:
> There once was a man who hauled molasses
> At common sense he barely passes
> For he forgot to tie down his load
> And dumped it on the road
> These people are known as dumbasses!

Nitsche's earlier physical altercation with another employee. Nitsche's confrontation with Bennett was over whether Nitsche had hit the other employee once or multiple times. Following this incident, McClure held a meeting with Nitsche and Bennett, told Nitsche to go home and think about his job, and asked Nitsche to return to work the following Monday, December 10. Nitsche met with McClure on December 10, at which time he reported the February 2001 poem incident to McClure. McClure then removed Nitsche from active employment, advised him to complete an anger management counseling program, having arranged an appointment for Nitsche, and stated he could not return to work until Osage Valley was satisfied Nitsche successfully completed counseling. During his absence from work, Nitsche used accumulated sick leave and vacation time through June 17, 2002, and thereafter received long-term disability benefits until June 8, 2004, while working on his farm raising cattle. Osage Valley ultimately discharged Nitsche from employment.

On April 11, 2002, Nitsche filed a charge against Osage Valley with the Missouri Commission on Human Rights (MCHR) and the Equal Employment Opportunity Commission (EEOC), alleging sex discrimination and sexual harassment based on Hanson's conduct. Nitsche received right to sue letters from the MCHR on August 18, 2003, and from the EEOC on September 16, 2003.

On December 15, 2003, Nitsche filed suit against Osage Valley,[3] alleging sexual harassment by way of unwanted sexual banter about females, in violation of Title VII and the MHRA. Thereafter, the district court granted summary judgment in favor of Osage Valley, concluding (1) there was insufficient evidence to establish Hanson's harassing conduct toward Nitsche was based on sex; (2) the harassment did not affect a term, condition, or privilege of employment because Hanson's conduct did not rise to the level of actionable hostile work environment sexual harassment; and (3)

---

[3]Nitsche originally named the CEO of Osage Valley as the defendant in this matter, but on July 27, 2004, the district court, over Osage Valley's objection, granted Nitsche leave to amend the complaint to change the named defendant to Osage Valley.

there was insufficient evidence Osage Valley either knew or should have known of the alleged harassing conduct. Nitsche appeals.[4]

## II. DISCUSSION

Our standard of review is a familiar one. We review de novo the district court's grant of summary judgment, viewing the evidence in the light most favorable to Nitsche, the nonmoving party. See LeGrand v. Res. for Cmty. & Human Servs., 394 F.3d 1098, 1101 (8th Cir.), cert. denied, 126 S. Ct. 335 (2005). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. We analyze Nitsche's claims under both Title VII and the MHRA in the same manner. See Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999) ("Our analysis is the same for both the state and federal claims because decisions under the various federal employment discrimination statutes are applicable and authoritative under the [MHRA] as well as federal law." (citation omitted)).

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C. § 2000e-2(a)(1). Discrimination based on sex that

---

[4]In its brief, Osage Valley argues the district court abused its discretion in granting Nitsche leave to file an amended complaint to change the named defendant from "CEO of Osage Valley" to "Osage Valley." We need not address this argument given Osage Valley's failure to file a cross-appeal on this issue. See El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 479 (1999) ("Absent a cross appeal, an appellee . . . may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." (internal quotation omitted)); see, e.g., Bethea v. Levi Strauss & Co., 916 F.2d 453, 456 (8th Cir. 1990) ("It is well-settled that failure to file a cross-appeal prohibits an appellee from attempting to enlarge [its] rights or lessen [its] adversary's rights." (citing Morley Constr. Co. v. Md. Cas. Co., 300 U.S. 185, 191 (1937); Langnes v. Green, 282 U.S. 531, 538 (1931); Johnson v. U.S. Fire Ins. Co., 586 F.2d 1291, 1294 n.7 (8th Cir. 1978))). We therefore limit our review to the issues raised in Nitsche's appeal.

creates a hostile or abusive working environment violates Title VII. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Quick v. Donaldson Co., 90 F.3d 1372, 1377 (8th Cir. 1996). To establish a prima facie case of hostile work environment sexual harassment, Nitsche must demonstrate: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take proper remedial action. See McCown v. St. John's Health Sys., Inc., 349 F.3d 540, 542 (8th Cir. 2003) (citation omitted). Because we conclude Nitsche failed to raise a genuine issue of fact regarding whether the harassment affected a term, condition, or privilege of employment, we affirm the district court's entry of summary judgment in favor of Osage Valley.

"Harassment affects a term, condition, or privilege of employment if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998) (quoting Harris, 510 U.S. at 21). Nitsche must clear a high threshold to demonstrate actionable harm, for "complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" obtain no remedy. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal quotation omitted). "[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Id. at 787 (citation omitted). To be actionable, the conduct complained of must be extreme in nature and not merely rude or unpleasant. LeGrand, 394 F.3d at 1101 (citation omitted). Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was "so intimidating, offensive, or hostile that it poisoned the work environment." Tuggle v. Mangan, 348 F.3d 714, 720 (8th Cir. 2003) (quoting Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir. 1999)). Such standards are demanding, for "Title VII does not prohibit all verbal or physical harassment" and is

not "a general civility code for the American workplace." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). In determining whether a work environment was sufficiently hostile or abusive, we examine the totality of the circumstances, including whether the discriminatory conduct was frequent and severe; whether it was physically threatening or humiliating, as opposed to merely an offensive utterance; and whether it unreasonably interfered with the employee's work performance. Harris, 510 U.S. at 23.

Supreme Court and Eighth Circuit precedent persuades us Hanson's conduct did not create an actionable hostile work environment. Given this court's rejection of claims premised on equally or more egregious facts than those set forth here, see LeGrand, 394 F.3d at 1102 (collecting cases), and Duncan v. Gen. Motors Corp., 300 F.3d 928, 935 (8th Cir. 2002), we conclude Nitsche fails to demonstrate the harassment he encountered was sufficiently severe or pervasive to alter the conditions of his employment and create a hostile work environment. Viewing the evidence, both objectively and subjectively, in the light most favorable to Nitsche, Hanson's behavior, albeit crude and immature, occurred sporadically over the course of approximately twenty years, was not physically violent or threatening, and did not unreasonably interfere with Nitsche's work performance. Although sexual content was abundant in Hanson's repertoire of ribaldry, "the Supreme Court has never held that 'workplace harassment . . . is automatically discrimination because of sex merely because the words used have sexual content or connotations.'" Scusa, 181 F.3d at 967 (quoting Oncale, 523 U.S. at 80). We also note Hanson's caricature incident occurring in October 2001 did not relate to Nitsche, the snakes and mice in Nitsche's lunch box and the molasses poem did not involve any sexual conduct or connotation, and Hanson's display of a pornographic video following a poker game occurred at Hanson's home, not the Osage Valley workplace. Further, Hanson's other comments were not so frequent, intimidating, offensive, or hostile to have poisoned the work environment. Keeping in mind "Title VII is 'not designed to purge the workplace of vulgarity,'" Duncan, 300 F.3d at 934 (quoting Baskerville v. Culligan Int'l Co., 50

F.3d 428, 430 (7th Cir. 1995)), we conclude Nitsche fails to demonstrate an actionable hostile work environment sexual harassment claim.[5]

## III.    CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Osage Valley.

_____

---

[5]Because we agree with the district court that Nitsche is unable to prove any material fact question as to the fourth element of his prima facie case, we need not address the remaining elements. See, e.g., Gilooly v. Mo. Dep't of Health & Senior Servs., 421 F.3d 734, 738 (8th Cir. 2005).