# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-1851

———————

Christine M. Brenneman,           *
                                    *

       Appellant,         *
                                    * Appeal from the United States

    v.                       * District Court for the
                                    * Southern District of Iowa.

Famous Dave's of America, Inc.,  *
and Dave Ryburn,          *
                                    *

       Appellee.        *

-------------------

Equal Employment Opportunity   *
Commission,             *
                                    *

       Amicus on Behalf of   *
       Appellant.       *

———————

Submitted: September 24, 2007
Filed:  November 16, 2007

———————

Before BYE, BENTON, and SHEPHERD, Circuit Judges.

———————

BENTON, Circuit Judge.

Christine M. Brenneman sued Famous Dave's of America, Inc., and David Ryburn (collectively "Famous Dave's"), asserting they subjected her to a hostile work

environment and retaliated against her, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Iowa Civil Rights Act, Iowa Code § 216.1 et seq. The district court[1] granted defendants summary judgment. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

This court states the facts in a light most favorable to Brenneman. *See Weger v. City of Ladue*, 500 F.3d 710, 718 (8th Cir. 2007). Famous Dave's hired Brenneman on January 20, 2003, as an assistant manager in West Des Moines, Iowa. Dave Ryburn, her immediate supervisor, was general manager of the restaurant there. Brenneman spent the first four to five weeks in Lincoln, Nebraska, training with Chuck LeCorgne, the general manager of the Lincoln restaurant. She began work at West Des Moines in mid-February 2003.

Ryburn began making sexual advances toward her the first two weeks they worked together. Ryburn winked and blew kisses at her daily. On March 21 and 30, Ryburn slapped her on the buttocks. Ryburn also pulled on the badge attached to the front of her belt. He did this at least twice a day.

Ryburn also made inappropriate comments. On March 28, he suggested that he conduct a review of Brenneman's work at her house, although reviews are customarily done at the restaurant. On March 31, Brenneman asked him for an envelope to mail a book to the corporate office. The envelope was too small. When she told Ryburn this, he responded: "pretend it was a condom and slip it on real soft." On April 1, Brenneman was discussing with another server how expensive their children's dental bills were. They joked they wished they could have sex with the dentist in exchange for their bills. Overhearing this, Ryburn asked if they could make

---

[1]The Honorable Robert W. Pratt, United States District Judge for the District of Southern Iowa.

that arrangement with him. In yet another incident, Ryburn told Brenneman he wanted to come to the restaurant after she closed to go over his "expectations." On April 5, he asked her how she was doing. When she said "fine," Ryburn replied, "Mm-hmm, you are fine." He then asked her if she needed anything and slapped her on the buttocks. On another occasion, Brenneman asked Ryburn if he could "stab" a customer's ticket. He responded, "I'd love to stab you."

Brenneman first reported Ryburn's behavior to her trainer, Chuck LeCorgne. On April 2, LeCorgne visited West Des Moines to conduct a review of the restaurant. Brenneman asked to speak to him later that day. He agreed; they met at another restaurant. After informing LeCorgne about Ryburn's behavior, he responded that Ryburn and his wife had just had a baby and "maybe [Ryburn] needed a little attention and he was looking in the wrong place." LeCorgne also stated: "Chris, you're a nice-looking lady. You are fun-loving, energetic, and he's probably attracted to you that way." LeCorgne said that he was "there as a friend and not a representative of Famous Dave's," though he told Brenneman he would contact Famous Dave's human resources department. He also told her to see if this had happened to anyone else and suggested she discuss her concerns with Ryburn or his immediate supervisor. Additionally, LeCorgne told Brenneman that Famous Dave's had a telephone hotline she could call.

During the same conversation, Brenneman expressed to LeCorgne that she was worried about "repercussions." Another employee had told her that Ryburn put him on an undesirable shift due to a scheduling change. A second employee had informed Brenneman that Ryburn had a habit of rearranging employees' schedules when he was angry with them. After Brenneman met with LeCorgne, Ryburn continued to blow kisses, wink at her, and make inappropriate comments.

On April 7, Brenneman called Famous Dave's employee hotline. No one answered; she hung up without leaving a message. She called again and left a

message with her name and telephone number. Brenneman also called LeCorgne, who promised to get her the direct number for human resources. After these calls, Brenneman went to work and talked to a co-manager about her concerns with Ryburn. The co-manager relayed what Brenneman told him to Karen Schindler in the human resources department. Within five to ten minutes, Schindler called Brenneman, who described the incidents with Ryburn. According to Brenneman, Schindler replied that his actions were "blatant sexual harassment."

On April 14 – the next time Ryburn was on duty – Schindler traveled to West Des Moines in order to investigate. Schindler told Brenneman not to go to work that day. That morning, Schindler called and asked if Brenneman wanted to meet with Ryburn and her to discuss the situation. Brenneman said she wanted Schindler to meet with Ryburn first. Brenneman spoke to Schindler again later that day. Schindler stated that Ryburn had admitted some of the allegations. She again asked whether Brenneman would meet with Ryburn and her to work out a new schedule. Later that evening, Schindler called Brenneman to say that she wanted to resolve the situation. Schindler asked Brenneman if she still wanted to work for Famous Dave's. Brenneman stated she was unsure and wanted to talk to her husband first. Schindler informed her that Famous Dave's could move her to another restaurant in Des Moines. Brenneman replied that she would call Schindler the next morning to discuss the situation in more detail. Schindler also talked with Brenneman's husband, offering to meet with Brenneman without Ryburn present.

On April 15, Schindler tried to contact Brenneman several times, leaving messages. Brenneman did not answer or return the calls. Brenneman testified that she was not ready to talk with Schindler and felt emotionally let down because the situation with Ryburn "wasn't taken care of." Later that day, Brenneman's lawyer called the human resources director to say she was resigning. Brenneman also emailed a letter to the director, confirming the resignation.

On April 18, the human resources director emailed Brenneman inviting her to return to work. On April 21, Ryburn sent her a letter apologizing for his behavior and also inviting her to return. Specifically, Ryburn wrote that he would "do everything possible to ensure you feel comfortable coming back to work at Famous Dave's." On April 24, the human resources director again wrote Brenneman inviting her to return. The letter stated that Famous Dave's had instructed Ryburn to refrain from any inappropriate behavior in the workplace. It also stated: "Famous Dave's does not disclose to one employee the specific discipline it imposes on another employee, so we cannot advise you of the specific discipline Mr. Ryburn received."

## II.

This court reviews de novo a grant of summary judgment, viewing the evidence and drawing all inferences in the light most favorable to the non-moving party. *Weger v. City of Ladue*, 500 F.3d 710, 718 (8th Cir. 2007). This court affirms if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id.*

Title VII prohibits employers from discriminating against any individual based on sex with respect to their compensation, terms, conditions, or privileges of employment. **42 U.S.C. § 2000e-2(a)(1)**.[2] "Discrimination based on sex that creates a hostile or abusive working environment violates Title VII." *Weger*, 500 F.3d at 718, *quoting Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 845 (8th Cir. 2006). In order to make a prima facie case for hostile working environment based on

---

[2]"The Iowa Civil Rights Act, Iowa Code Chapter 216.6(1), has a similar provision which mirrors federal law, so our discussion of [Brenneman's] Title VII claim applies equally to her claim under the Iowa Civil Rights Act." *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 907 n.3 (8th Cir. 2006), *citing Montgomery v. John Deere & Co.*, 169 F.3d 556, 558 n.3 (8th Cir. 1999).

supervisor sexual harassment, the plaintiff must show that: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of her employment. *Weger*, 500 F.3d at 718.

The district court found that Brenneman established a prima facie case for hostile working environment, focusing on whether the harassment affected a term, condition, or privilege of her employment. To constitute a hostile work environment, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1195 (8th Cir. 2006), *quoting* *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). This court examines the totality of the circumstances, looking at "whether the discriminatory conduct was frequent and severe; whether it was physically threatening or humiliating, as opposed to merely an offensive utterance; and whether it unreasonably interfered with the employee's work performance." *Nitsche*, 446 F.3d at 846.

Viewing the facts most favorably to Brenneman, the district court did not err in finding that she established a prima facie case against Ryburn. Ryburn's conduct started within the first two weeks of her employment at Famous Dave's and persisted throughout her entire employment, including offensive touching and humiliating comments. A reasonable person could find that this environment was sufficiently hostile to affect Brenneman's working conditions. *See* *Beard v. Flying J, Inc.*, 266 F.3d 792, 798 (8th Cir. 2001) (finding harassment to be severe and pervasive when over a three-week period plaintiff was subjected to numerous incidents in which her breasts were touched).

III.

In cases of supervisor harassment, the employer is vicariously liable unless the employer demonstrates that it is entitled to the *Ellerth-Faragher* affirmative defense. ***Burlington Indus., Inc. v. Ellerth***, 524 U.S. 742, 765 (1998); ***Faragher v. City of Boca Raton***, 524 U.S. 775, 807-08 (1998). This affirmative defense is unavailable if the employee suffers a tangible employment action. ***Id.*** at 808; ***Ellerth***, 524 U.S. at 765. A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." ***Ellerth***, 524 U.S. at 761. If there is no tangible employment action, the employer may assert the affirmative defense. ***Ellerth***, 524 U.S. at 765.

A.

Brenneman argues she suffered a tangible employment action because she was constructively discharged from Famous Dave's. "Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit." ***Tatum v. Ark. Dep't of Health***, 411 F.3d 955, 960 (8th Cir. 2005). To prove constructive discharge, a plaintiff must demonstrate that: "(1) a reasonable person in her situation would find the working conditions intolerable and (2) the employer . . . intended to force the employee to quit." ***Id.***, *citing **Gartman v. Gencorp Inc.***, 120 F.3d 127, 130 (8th Cir. 1997). If the plaintiff cannot show that the employer intended to force her to quit, she can still prevail if "the employer . . . could have reasonably foreseen that the employee would [quit] as a result of its actions." ***Wright v. Rolette County***, 417 F.3d 879, 886 (8th Cir. 2005), *quoting **Fenney v. Dakota, Minn. & E. R.R. Co.***, 327 F.3d 707, 717 (8th Cir. 2003).[3] A reasonable

---

[3]Brenneman and amicus EEOC assert that the Supreme Court has overruled this circuit's requirement that the plaintiff demonstrate the employer's intent, or the reasonably foreseeability, that the employee quit. *See **Pa. State Police v. Suders***, 542 U.S. 129, 134, 147 (2004). Because Brenneman does not show that the working

employee has "an obligation not to assume the worst and not to jump to conclusions too quickly. An employee who quits without giving [her] employer a reasonable chance to work out a problem has not been constructively discharged." *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 935 (8th Cir. 2002), *quoting Summit v. S-B Power Tool*, 121 F.3d 416, 421 (8th Cir. 1997).

Here, Brenneman was not constructively discharged. A reasonable person in her position would not have found the working conditions so intolerable that she was compelled to resign. *See Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004); *compare Van Steenburgh v. Rival Co.*, 171 F.3d 1155, 1160 (8th Cir. 1999) (working conditions were intolerable where there was a five-year pattern of harassment that included sexual propositions, physical touching, and serious threats of retaliation, and the employer failed to remedy the problem after formal complaints were made). Famous Dave's was investigating, proposing solutions (a new schedule or relocation), and continuing to invite Brenneman back after she resigned. In sum, she could have taken "steps short of resignation to improve her working conditions, but she declined to do so." *Duncan*, 300 F.3d at 936. Brenneman asserts she thought the investigation was complete and no action would be taken against Ryburn. This is, however, contrary to her obligation not to assume the worst and not to jump to conclusions too quickly. *See Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir. 1998). Because Brenneman was not constructively discharged, she did not suffer a tangible employment action.

B.

Because Brenneman did not suffer a tangible employment action, Famous Dave's may assert the *Ellerth-Faragher* affirmative defense. *See Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. This affirmative defense has two elements: (1) the employer exercised reasonable care to prevent and correct promptly any sexually

conditions were so intolerable that a reasonable person would have felt compelled to quit, this court need not address this assertion.

harassing behavior and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to otherwise avoid harm. *Id.*; *Ellerth*, 524 U.S. at 765.

The first element has two prongs: prevention and correction. *See Weger*, 500 F.3d at 719. Under the prevention prong, the employer must have exercised reasonable care to prevent sexual harassment. *Id.* Under the correction prong, the employer must have promptly corrected any sexual harassment that occurred. *Id.*

Famous Dave's demonstrated that it exercised reasonable care to prevent sexual harassment. It has a facially valid anti-harassment policy, with a non-retaliation provision and a flexible reporting procedure, listing four individuals who may be contacted in the case of harassment. Although having an anti-harassment policy is not in itself enough to show that Famous Dave's exercised reasonable care, distribution of a valid policy provides compelling – but not dispositive – proof of preventing sexual harassment. *See id.*; *Varner v. Nat'l Super Mkts., Inc.*, 94 F.3d 1209, 1213 (8th Cir. 1996). Most importantly, Brenneman received training specifically about the policy. *See Williams v. Mo. Dep't of Mental Health*, 407 F.3d 972, 977 (8th Cir. 2005). Although it is disputed whether Ryburn received similar training, Famous Dave's still had an effective policy in place. While Brenneman criticizes LeCorgne's "less than ideal" actions after their meeting on April 2, Brenneman testified that he did tell her about the 1-800 hotline. When Brenneman invoked the hotline and the policy, she received an immediate response from Famous Dave's.

Additionally, Famous Dave's meets the correction prong. When the harassment was reported, Famous Dave's sent Schindler to investigate and stop the harassment. Moreover, Schindler attempted to work out a new schedule with Brenneman and offered to relocate her to a restaurant five miles away. Though transferring Brenneman, instead of Ryburn, is not ideal, Famous Dave's has satisfied the correction prong. *See Weger*, 500 F.3d at 723, *citing Farley v. Am. Cast Iron Pipe Co.*, 115 F.3d 1548, 1555 (11th Cir. 1997) ("Although [an employee] remains

unsatisfied with [her employer's] resolution of her complaint, we have never stated . . . that a complainant in a discrimination action has a right to the remedy of her choice."). Famous Dave's satisfies the first element of the defense.

Famous Dave's also satisfies the second element of the defense. While Brenneman did not unreasonably fail to take advantage of any preventative opportunities, she did unreasonably fail to take advantage of corrective opportunities. Her failure to take advantage of Schindler's assistance was unreasonable. *See Duncan*, 300 F.3d at 935 (a reasonable employee has an obligation to give the employer a chance to work problems out). Brenneman tries to justify not cooperating with Schindler, claiming she feared "repercussions" from Ryburn. This excuse is unreasonable here where Schindler, a corporate human resources officer, appeared to any reasonable observer to be in charge of the situation and superior to Ryburn. Morever, the policy expressly contained an anti-retaliation provision. *See Weger*, 500 F.3d at 725 ("Furthermore, the reasonableness of Plaintiffs' fears of retaliation is further called into question because the Department's antiharassment policy contained an antiretaliation provision.").

IV.

Brenneman asserts that Famous Dave's unlawfully retaliated against her by constructively discharging her. Title VII prohibits retaliation against employees who allege or participate in a proceeding or investigation that claims their employer violated Title VII. **42 U.S.C. § 2000e-3(a)**. A prima facie case of retaliation requires showing that: (1) the employee engaged in protected conduct; (2) reasonable employees would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. *Weger*, 500 F.3d at 726, *citing **Burlington N. & Santa Fe Ry. Co. v. White***, 548 U.S. __, 126 S. Ct. 2405, 2415 (2006). The "materially adverse" element is objective. *Id.* A court must consider whether "a reasonable employee would have found the challenged action materially adverse, . . . [whether] it . . . might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* Brenneman

-10-

cannot make a prima facie case of retaliation because, as discussed, she was not constructively discharged.

V.

The judgment of the district court is affirmed.

_____