# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2049

_____

Gina Jenkins,                                    *
                                                 *
            Appellant,                           *
                                                 *   Appeal from the United States
      v.                                         *   District Court for the
                                                 *   Western District of Missouri.
Donald C. Winter,                                *
Secretary of The Navy, et al.                    *
                                                 *
            Appellees.                           *

_____

Submitted: March 14, 2008
Filed:  September 2, 2008

_____

Before MURPHY, BRIGHT, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Gina M. Jenkins sued Donald C. Winter,[1] Secretary of the Navy (the Navy), End to End, Inc. (ETE), Wesley Jones, and Clayton Hartley for sexual harassment and retaliation.  In addition, Jenkins asserted state law claims against Jones and Hartley for assault and battery, and defamation of character.  The Navy and ETE moved for summary judgment; the district court granted it.  The court also granted Hartley's

---

[1]Pursuant to *Fed. R. App. P. 43(c)(2)*, Secretary of the Navy, Donald C. Winter is automatically substituted for his predecessor, Gordon R. England, as appellee.

motion to dismiss and dismissed the state law claims against Jones. Jenkins appeals the district court's grant of summary judgment for the Navy. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part, reverses in part, and remands.

## I.

In this summary judgment context, this court states the facts most favorably to Jenkins, the non-moving party. *See Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008).

Jenkins worked as a Program Analyst, or statistician, for the Navy Recruiting District Office in Kansas City, Missouri, from October 2001 to March 2006. A civilian employee, she was hired by ETE, a contractor that provided technical and administrative workers for the Navy. At the time of the harassment, Jenkins's immediate supervisor was the head of the Enlisted Programs Office, Lieutenant Commander Mary Kortz. The immediate supervisor of the Enlisted Programs Office was Executive Officer Michael Borrosh. The ultimate supervisor of the Enlisted Programs Office was Commanding Officer Scott Hale.

Jones, the harasser, was the Command Master Chief for the Kansas City office. He started work there on October 14, 2003. Hartley, who allegedly retaliated against Jenkins, was the Chief Recruiter at the command.

Jenkins alleges the harassment started October 16, 2003. She claims Jones made daily comments about how attractive and sexy she was, leered suggestively at her, and repeatedly asked her for sex. He made comments such as: (1) "he had girls who would give him 'blow jobs' if she would not do anything for him"; (2) "let's do it one time, I will let you be in control"; and (3) "he would give her 'a dollar to dance on his desk.'" Jones also was hostile toward Jenkins when she rejected him. He would give her mean looks, curse and swear at her, and say she was on his "'shit list' for not

dating him." On one occasion, in "late November," Jones inappropriately touched and fondled Jenkins's leg and inner thigh. Another employee was in the office at the time and witnessed the incident.

During the week of November 17, Jenkins talked to the Command Managed Equal Opportunity Officer Sean Williamson. She told Williamson about Jones's comments and behavior, but did not say anything about the touching incident. She indicated she did not want to file a formal complaint at the time.[2] According to Jenkins, Williamson agreed "not knowing the severity of the situation, and only with [her] assurance that [she] would immediately report the incident if the situation did not stop immediately." Following the Navy's policy, he encouraged her to handle the matter informally – to talk to Jones and ask him to stop.

Under the Navy's sexual harassment policy, a person who has been harassed is encouraged, but not required, to resolve the situation informally by addressing concerns with the person demonstrating the behavior. If the behavior does not stop, then the person is to notify the chain of command.[3]

Following the conversation with Williamson, Jenkins talked to Jones telling him she "was uncomfortable with his behavior." She told him she was married, and

_____

[2]In the January 21, 2004, written statement about the harassment and retaliation, Jenkins explains, "I did not give [Williamson] names or details" and "I told him that I did not want to file a formal complaint at this time." However, Williamson in his deposition says Jenkins told him vaguely about the situation, telling him that Jones made inappropriate comments. Because this court views the evidence most favorably to Jenkins, it will assume she told Williamson about Jones. *See Anda*, 517 F.3d at 531.

[3]There is a dispute as to whether the Navy's sexual harassment policy applies to Jenkins because she was employed by ETE. In addressing Jenkins's appeal against the Navy, this court assumes the Navy's policy applies. Jenkins's chain of command includes Kortz, Borrosh, and Hale.

even if she were single, she "would never date or sleep with a co-worker." Jones listened but "had no further comments."

Williamson, in the plan of the week for November 21 to 28, sent a note to all military personnel stating: "all personnel are responsible for treating others with mutual respect and dignity. This means fully and faithfully complying with the Navy's policy of zero sexual harassment." On Monday, November 24, he sent an email to military personnel reiterating the same point. After receiving the email, Borrosh asked Jenkins if she was being harassed by anyone at work. Jenkins told Borrosh that she "was experiencing something that was making me uncomfortable but that I had talked to the CMEO and was handling it on my own." Following the conversation with Borrosh, Jenkins received two phone calls from officers in the district, including Chief Daniel Hartman, who said he learned of the harassment from Chief Frank Waranch. Each caller asked about the harassment between Jones and her. Jenkins explains: "From that point, who did or did not know was no longer in my control and the situation spiraled from there."

The following Monday, December 1, Hale, the Commanding Officer, learned of the situation between Jenkins and Jones. Hale called Williamson, who told him it was being handled informally. Hale also talked to Jones, who denied knowing anything. On December 4, 2003, Hale asked Jones, Jenkins, Williamson, Hartley, Borrosh, and others to discuss the situation in his office. Initially refusing, Jenkins

> informed the entire group of each of the incidents . . . . Up to this moment, although . . . [Williamson] and . . . [Borrosh] did know someone had made me feel uncomfortable, I had not informed any person in the Chain of Command as to the severity of what had been transpiring. I genuinely believe that every person present at this time was shocked and angry to hear what . . . I had to say.

According to Jenkins, the harassment ended that day, December 4.

A formal investigation was completed on January 24. Following the investigation, Jones was placed on permanent administrative leave on January 26, and detached for cause on February 23. If a Command Master Chief is detached for cause, there is no further job with the Navy. The individual is forced to retire and his Navy career is terminated.

Jenkins received awards from the Navy in 2004 and 2005 for "exceptionally outstanding performance as a statistician," and "on-the-spot" bonus awards from ETE at the end of the year in 2003, 2004, and 2005. She remained in her job after December 4, 2003, and her job duties did not change; she did not receive any kind of demotion or reassignment. She resigned from her job on March 10, 2006, because the Kansas City recruiting office closed.

## II.

Ruling on the motions for summary judgment, the district court deemed admitted all facts stated in the Navy's summary judgment motion. *See* **W.D. Mo. R. 56.1(a)**. The court concluded that Jenkins had "failed to specifically controvert in numbered paragraphs the Defendant's statement of facts in her response to the pending motion for summary judgment." The court stated:

> In her response, plaintiff sets forth her own statement of facts, many of which are not supported by competent evidence that could be considered by the Court in the summary judgment context. Consequently, the facts stated below are derived from Defendant's statement of facts, unless otherwise indicated.

This court reviews for abuse of discretion. *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 990 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 2088 (2007).

"Local Rule 56.1 places size and content limitations on a non-movant's response to a summary judgment motion." *Id.* It states:

Suggestions in opposition to a motion for summary judgment shall begin with a section that contains a concise listing of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be set forth in a separate paragraph, shall refer specifically to those portions of the record upon which the opposing party relies, and, if applicable, shall state the paragraph number in movant's listing of facts that is disputed. All facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party.

**W.D. Mo. R. 56.1(a)**.

Here, Jenkins properly followed Local Rule 56.1. In her motion opposing summary judgment, Jenkins, after the preliminary statement, included a concise listing of material facts as to which she contends a genuine issue exists. The list contained 37 separate facts set forth in separate paragraphs. Each fact, except one, referred specifically to portions of the record. Although less than half of Jenkins's facts referenced the specific paragraph number in the Navy's listing of facts, this is required only if applicable. Local Rule 56.1 does not require Jenkins to specifically controvert in numbered paragraphs the Navy's statement of facts (contrary to the district court's conclusion). *See id.* Further, Jenkins disputed the material facts most relevant to the issues raised in the summary judgment motion (*i.e.*, whether Jones was her supervisor, the Navy's sexual harassment policy and training, when the Navy became aware of the harassment, when she reported the harassment, and whether there was retaliation afterwards).

The district court erred in not considering Jenkins's statement of facts. *See Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (considering a summary judgment motion, the district court views the evidence and draws all inferences in a light most favorable to the non-moving party).

The district court concluded that Jenkins's statement of facts were not supported by competent evidence that could be considered for summary judgment:

> Plaintiff provides the purported "affidavit" of Chief Waranch . . . . Waranch's "affidavit," however, is not a valid affidavit because it was not verified in that it does not bear a notary stamp or seal, and the document does not qualify as an unsworn declaration pursuant to 28 U.S.C. § 1746 because it was not sworn to be true under penalty of perjury; See also DeMars v. O'Flynn, 287 F.Supp.2d 230 (W.D.N.Y. 2003). Therefore, the Court will not consider this 'affidavit' in ruling on the pending motions for summary judgment.

At oral argument, the original of the Frank Waranch affidavit was presented to the court. It is a valid affidavit – signed, attested before a notary public, and bearing a notary seal. *See Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006).

The Navy argues, even if the affidavit is valid, it is hearsay and should not be considered on summary judgment. The Navy also claims the Daniel Hartman affidavit is hearsay, too. Chief Hartman's affidavit states: "I learned that command Master Chief Jones was making inappropriate comments to Ms. Gina Jenkins during a telephone conversation." Chief Waranch's affidavit states: "Because it was necessary for me to speak with Gina Jenkins regularly concerning statistics for the area I supervised, I spoke with her often. I became aware that she was being harassed by Chief Jones shortly after it began." Jenkins concedes these two statements are hearsay, but insists the affidavits are still admissible because the rest of the affidavits are based on personal knowledge.

Rule 56(e)(1) of the *Federal Rules of Civil Procedure* requires affidavits to be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." "When an affidavit

contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005). *See generally* **Fed. R. Evid. 801(c)** ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

As Jenkins indicates, the two statements above are hearsay and may not be used to defeat the Navy's summary judgment motion. However, other statements in the affidavits may be considered as they are based on personal knowledge. For example, Waranch and Hartman were in the same district as Jenkins during the time the harassment occurred, they contacted together the Command Managed Equal Opportunity Officer about the harassment, and they were present at meetings when the harassment was discussed. Waranch also claims he suffered retaliation for standing up for Jenkins and witnessed retaliation against Jenkins. Clearly, these statements may be considered when reviewing a summary judgment motion. *See* **Fed. R. Civ. P. 56(c), (e)**.

The district court erred in excluding the Waranch affidavit. The Waranch and Hartman affidavits are admissible for consideration in the summary judgment context.

IV.

This court reviews de novo a grant of summary judgment. *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008). Viewing the evidence and drawing all inferences most favorably to the non-moving party, this court affirms if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*, *citing* **Fed. R. Civ. P. 56(c)**.

Title VII prohibits employers from discriminating based on sex with respect to compensation, terms, conditions, or privileges of employment. **42 U.S.C. § 2000e-**

**2(a)(1)**.  "Discrimination based on sex that creates a hostile or abusive working environment violates Title VII."  ***Brenneman v. Famous Dave's of Am., Inc.***, 507 F.3d 1139, 1143 (8th Cir. 2007), *quoting* ***Weger v. City of Ladue***, 500 F.3d 710, 718 (8th Cir. 2007).

To establish a prima facie hostile work environment claim for co-worker harassment, Jenkins must prove: (1) she was a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and her membership in the protected group; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.  *See* ***Anda***, 517 F.3d at 531.

For supervisor harassment, Jenkins must prove only the first four elements to establish a prima facie case.  *See* ***Brenneman***, 507 F.3d at 1139.  If a prima facie case is shown, the employer is vicariously liable unless it demonstrates that it is entitled to the *Ellerth-Faragher* affirmative defense.  *See* ***id.*** at 1144, *citing* ***Burlington Indus., Inc. v. Ellerth***, 524 U.S. 742, 765 (1998) *and* ***Faragher v. City of Boca Raton***, 524 U.S. 775, 807-08 (1998).  The affirmative defense is unavailable if the employee suffers a tangible employment action.  ***Brenneman***, 507 F.3d at 1144.  "A tangible employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  ***Id.*** (internal quotation marks omitted).  "If there is no tangible employment action, the employer may assert the affirmative defense."  ***Id.***

For purposes of summary judgment, the district court analyzed Jenkins's hostile work environment claim under both the co-worker and supervisor standards.  It concluded the Navy took: (1) reasonable care to avoid sexual harassment by a co-worker, and (2) prompt and effective measures to prevent and remedy any sexual harassment by a supervisor and Jenkins failed to avail herself of available remedies.

(The district court did not address whether Jenkins established the first four elements.) Similarly, this court will consider whether Jenkins proved the Navy knew or should have known of the harassment and failed to take prompt and effective remedial action, and whether the Navy proved the affirmative defense. *See Weger*, 500 F.3d at 718.


A.  Co-worker Harassment


"In determining whether the employer failed to take 'prompt and effective remedial action to end the harassment,' [this court] consider[s] 'the amount of time between notice of the harassment and any remedial action, the options available to the employer such as employee training sessions and disciplinary action taken against the harassers, and whether or not the measures ended the harassment.'" *Arraleh v. County of Ramsey*, 461 F.3d 967, 979 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 2100 (2007), *quoting Diaz v. Swift-Eckrich, Inc.*, 318 F.3d 796, 801 (8th Cir. 2003). Notice is the key issue here.

"[W]here an employer has a complaint procedure delineating the individuals to whom notice of harassment must be given," actual notice is established when the employee notifies those individuals. *Weger*, 500 F.3d at 721 ("because the Department has a published policy that provides a procedure for reporting suspected harassment, Plaintiffs must have invoked this procedure in order to establish actual notice"). "Constructive notice, on the other hand, is established when the harassment was so severe and pervasive that management reasonably should have known of it." *Id.*, *quoting Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003); *see also Smith v. St. Louis Univ.*, 109 F.3d 1261, 1265 n.3 (8th Cir. 1997) (stating constructive notice may be shown if "the harassment was obvious to everyone").

Jenkins insists the Hartman and Waranch affidavits are sufficient to overcome summary judgment. Hartman, in his affidavit, states he learned of the harassment "sometime before the meeting in December." He continues:

I discussed what Ms. Jenkins had told me with Chief Frank Warranch, and I believe that he had already heard about it from someone else. Together, we called the Command's Equal Employment Opportunity Officer and reported Ms. Jenkins's' [sic] allegations to him. Chief Warranch and I were on a speaker phone discussing the matter with him. At that time the EEO Officer was Sean Williamson. To the best of my knowledge nothing happened after Chief Warranch and I reported command master Chief Jones' actions. Master Chief Jones' actions were pretty widely known among the command's zone supervisors. We discussed it among ourselves at production meetings but, of course, did not discuss it outside supervisory ranks.

The Waranch affidavit states:

> . . . . I became aware that she was being harassed by Chief Jones shortly after it began. I first spoke with Chief Sean Williamson about the harassment and later spoke personally with Master Chief Jones. Chief Williamson did not do anything and Chief Jones told me to "stay within my rank." It was discussed in zone meetings between the zone supervisors. . . .
>
> We kept telling C.R. Hartley about the harassment but he was not receptive to hearing about it. . . . I spoke with Chief Williamson about the harassment on more than one occasion. I also spoke with Rick Field, a retired Chief . . . and he reported what was going on to Chief Williamson.
>
> . . . . On one occasion, I went to the office of Command Officer Hale and began to tell him about Chief Jones' harassment of Gina Jenkins. . . .

. . . . After the incident where Master Chief Jones inappropriately touched Gina Jenkins, Chief Dan Hartman and I together placed a telephone call to the Equal Opportunity Officer, Sean Williamson and told him about it. . . . I am not aware that he took any action as the result of our telephone call. I went personally to Command Officer Hale and told him about the inappropriate touching. . . . The command staff had numerous opportunities to stop the harassment had they chosen to do so.

Viewing the evidence most favorably to Jenkins, the affidavits create a genuine issue of material fact as to when the Navy learned of the sexual harassment. *See Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008) ("an issue of material fact is genuine if the evidence is sufficient to allow a reasonable jury verdict for the nonmoving party"). Although the affidavits do not provide specific dates, the chronologies in the affidavits, read most favorably to Jenkins, suggest the Navy had actual or constructive knowledge of the harassment well before the December 4 meeting. For instance, viewing Waranch's affidavit most favorably to Jenkins, it is reasonable to infer that the Navy had actual or constructive knowledge of the harassment shortly after it began. This court does not weigh the evidence or make credibility determinations. *See id.* ("In considering a motion for summary judgment the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue."), *citing Thomas v. Corwin*, 483 F.3d 516, 526-27 (8th Cir. 2007). The evidence presented could persuade a reasonable jury to rule in favor of Jenkins and find that the Navy failed to take prompt or effective remedial measures to end the harassment.

The district court's grant of summary judgment is reversed, as to co-worker harassment.

## B. Supervisor Harassment

The district court also analyzed Jenkins's claim under the supervisor harassment standard. Because Jenkins does not claim she suffered a tangible employment action, the Navy may assert the *Ellerth-Faragher* affirmative defense. *See Brenneman*, 507

F.3d at 1145. The defense has two elements: (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to otherwise avoid harm. *Id.* "The first element has two prongs: prevention and correction." *Id.*

As relevant here, the correction prong requires the employer to show it promptly corrected any sexual harassment that occurred. *Id.* [I]n applying the correction prong, the employer's notice of the harassment is of paramount importance." *Weger*, 500 F.3d at 720 (internal quotation marks omitted).

As discussed in section A, genuine issues of material fact exist as to when the Navy had actual or constructive notice of the harassment. This goes to the correction prong. Because the Navy fails to demonstrate as a matter of law that it acted promptly to correct any sexual harassment, and thus fails to prove the first element of the affirmative defense, summary judgment was inappropriate. *See Anda*, 517 F.3d at 531 (summary judgment appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law), *citing* **Fed. R. Civ. P. 56(c)**.

The district court's grant of summary judgment is reversed, as to supervisor harassment.

V.

In her opening brief, Jenkins does not present an issue for review as to retaliation. She does not provide any argument on the retaliation claim. In fact, the "Argument" portion of the brief does not include the word "retaliation." In her reply brief, Jenkins does object to the grant of summary judgment "in its entirety," due to "a wholly inadequate factual review."

Claims not raised in an opening brief are deemed waived. *See Fair v. Norris*, 480 F.3d 865, 869 (8th Cir. 2007); *see also Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 702 (8th Cir. 2008), *citing Miss. River Corp. v. FTC*, 454 F.2d 1083, 1093 (8th Cir. 1972) ("[p]roper judicial administration" requires that appellant raise issues in opening brief); *K.D. v. County of Crow Wing*, 434 F.3d 1051, 1055 n.4 (8th Cir. 2006); *Chay-Velazquez*, 367 F.3d 751, 756 (8th Cir. 2004) ("Since there was no meaningful argument on this claim in his opening brief, it is waived."). This court does not consider issues raised for the first time on appeal in a reply brief "unless the appellant gives some reason for failing to raise and brief the issue in his opening brief." *Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 421 n.5 (8th Cir. 2005).

Jenkins does not provide a reason for failing to raise and brief the retaliation claim in her opening brief. Therefore, it is waived. *See Fair*, 480 F.3d at 869.

The district court's grant of summary judgment is affirmed, as to retaliation.

VI.

ETE asserts this court lacks jurisdiction to review any appeal against it because Jenkins did not identify the district court's grant of ETE's summary judgment motion as an issue on appeal. The Notice of Appeal indicates the issues are:

> Whether the Affidavit submitted by plaintiff in opposition to defendant [the Navy]'s Summary Judgment Motion and plaintiff's denial of defendant [the Navy]'s Statement of Uncontroverted Facts were sufficient to overcome [the Navy]'s Motion.

Rule 3(c)(1)(B) of the *Federal Rules of Appellate Procedure* requires the notice of appeal to "designate the judgment, order, or part thereof being appealed." *Parkhill v. Minn. Mut. Life Ins. Co.*, 286 F.3d 1051, 1058 (8th Cir. 2002). This court "construes notices of appeal liberally as long as the intent to appeal the judgment in

question is apparent and there is no prejudice to the adverse party." ***PCTV Gold, Inc. v. SpeedNet, LLC***, 508 F.3d 1137, 1142 (8th Cir. 2007).

Here, Jenkins's intent to appeal the district court's grant of ETE's summary judgment motion is not apparent from the notice of appeal. Permitting Jenkins to assert claims against ETE would be prejudicial. Therefore, this courts lacks jurisdiction to review the grant of ETE's summary judgment motion. *See **Parkhill***, 286 F.3d at 1059.

## VII.

The judgment of the district court is affirmed in part, reversed in part, and the case remanded.

_____