# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-2451

_____

United States of America

*Plaintiff - Appellee*

v.

Ronald Jermaine Jackson

*Defendant - Appellant*

_____

No. 21-2612

_____

United States of America

*Plaintiff - Appellee*

v.

Ronald Jermaine Jackson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 13, 2022
Re-submitted: September 20, 2022
Filed: October 12, 2022
[Unpublished]
_____

Before ERICKSON, STRAS, and KOBES, Circuit Judges.

_____

PER CURIAM.

Ronald Jackson received an 84-month sentence after a judge found him guilty of Hobbs Act robbery, 18 U.S.C. §§ 2 and 1951, and brandishing a firearm during a crime of violence, 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii). Although he argues that he should have received a jury trial, some of the evidence used to convict him was inadmissible, and the robbery charge is not a "crime of violence," we affirm.

## I.

Ronald Jackson and William Graham decided to rob a cellphone store. Both carried weapons: Jackson a pistol and Graham a BB gun. Each wore a wig, mask, and reflective vest. While Graham was using zip ties to restrain the store's employees in the back room, Jackson threw cellphones into a mesh bag.

One was a "bait phone," which alerted a local security company that a robbery was taking place. The security company alerted the police, who then arrested both men.

## II.

Jackson originally requested a jury trial, but preparations took longer than usual due to COVID-19 protocols. In accordance with the procedures in place at the time, the

district court[1] brought in 170 jurors, had them fill out a series of questionnaires, and screened each "to ensure their safety."

Less than two weeks before the jury trial was set to begin, Jackson changed his mind. Proceeding pro se, he informed the district court that he no longer wanted a jury to decide his fate. After an extensive back and forth, the court accepted Jackson's jury-trial waiver, excused the prospective jurors, and began preparations for a bench trial.

Just eleven days later, on the morning of trial, Jackson changed his mind again. Now he wanted a trial "before . . . 12 men and women." After explaining that Jackson's last-minute change of heart would cause significant delay, the district court denied the request. Jackson argues that refusing to accommodate him violated his Sixth Amendment right to a jury trial.

There is no question that the Sixth Amendment entitles Jackson to a jury trial. *See* U.S. Const. amend. VI; *United States v. Williams*, 951 F.3d 892, 899 (8th Cir. 2020). But like most other constitutional rights, a criminal defendant can waive it.[2] *See Patton v. United States*, 281 U.S. 276, 309–10 (1930). It is possible to reinstate the right, but not if it would "unduly interfere with [and] delay the proceedings." *Zemunski v. Kenney*, 984 F.2d 953, 954 (8th Cir. 1993) (quoting *United States v. Mortensen*, 860 F.2d 948, 950 (9th Cir. 1988)).

Here, the district court concluded that it would. In its view, replicating the comprehensive COVID-19 protocols would take a matter of months and require "enormous . . . resources." And given that Jackson had decided just eleven days earlier

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

[2]Jackson's waiver was knowing and voluntary. Before accepting it, the court told him what he was waiving: the right to a unanimous verdict by a jury he would help select in favor of a determination of guilt by the court alone. *See Williams*, 951 F.3d at 900.

to waive a jury trial, the court had good reason to hold Jackson to his decision rather than delay the proceedings any further.[3]

## III.

The court also had good reason to allow the government to show that, roughly six years earlier, Jackson had kidnapped someone while robbing another cellphone store. He argues now, as he did before trial, that introducing the conviction violated the Federal Rules of Evidence.

The general rule is that the government cannot introduce evidence of a past crime if the only "purpose" is to "show[] that [the defendant] is a bad guy." *United States v. Fortier*, 956 F.3d 563, 568 (8th Cir. 2020); *see also* Fed. R. Evid. 404(b)(1). It is admissible, however, for other reasons, like showing that the same person who committed an earlier crime committed the later one too. *See* Fed. R. Evid. 404(b)(2) (listing "identity" as a "[p]ermitted [u]se[]"). When introduction of a prior bad act serves a non-propensity purpose, "[it] is presumed admissible," *United States v. Walker*, 428 F.3d 1165, 1169 (8th Cir. 2005), if "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value," *United States v. Drew*, 9 F.4th 718, 723 (8th Cir. 2021).

The key here is the first requirement.[4] The government offered Jackson's prior conviction to show that he committed the same type of crime as before. To be admissible

---

[3]We have never said what standard of review applies in these circumstances. *Cf. United States v. Jackson*, 278 F.3d 769, 770–71 (8th Cir. 2002). There is no need to resolve that question here because, under any standard of review, Jackson's argument fails.

[4]The others do not present a close call. Jackson pleaded guilty, which means the kidnapping conviction was "supported by sufficient evidence." *See Drew*, 9 F.4th at 723. It was just six years old—and it involved the same stolen goods, co-conspirators, and intended targets—so it is "similar in kind and not overly remote in time." *Id.* And any

as identity evidence, the crimes had to share "a signature modus operandi" that "earmark" them "as the handiwork of the accused." *United States v. LeCompte*, 99 F.3d 274, 278 (8th Cir. 1996) (emphasis omitted) (quotation marks omitted).

Both crimes had the same distinctive "earmarks": the same co-conspirators (Jackson and Graham); the same target (a cellphone store); the same type of weapons ("firearm[s]—or look-alike[s]"); and the same bindings (zip ties). *Id.* These characteristics make the crimes "distinctive" enough to make the prior kidnapping conviction admissible as identity evidence. *See United States v. Carroll*, 207 F.3d 465, 469–70 (8th Cir. 2000).

IV.

One final, late-breaking issue. The crime of brandishing a weapon has a requirement that it occur during a "crime of violence": a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3). Jackson's underlying felony was Hobbs Act robbery, which involves "the unlawful taking or obtaining of personal property . . . by means of . . . threatened force." 18 U.S.C. § 1951(b)(1). His argument is that, based on a recent Supreme Court decision, aiding-and-abetting robbery does not involve "the use, attempted use, or threatened use of force." *See United States v. Taylor*, 142 S. Ct. 2015 (2022) (concluding that an *attempted* Hobbs Act robbery is not a "crime of violence").

Whatever the merits of the argument, Jackson raised it too late. *Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008). The first time he mentioned it was three months *after* oral argument, long after we had submitted the case for decision. "Claims not raised in an opening brief are deemed waived," *id.*, so it is no surprise that waiting even longer is just as much of a problem.

---

"potential prejudice [did] not substantially outweigh [the conviction's] probative value." *Id.*

-5-

To be sure, as Jackson points out, the Supreme Court did not decide *Taylor* until a month after we held oral argument. But that is no excuse. After all, Jackson had multiple chances to raise it earlier: perhaps when a circuit split arose over the issue, when the Supreme Court granted certiorari in *Taylor*, or after it held oral argument. Whatever the reason for the delay, Jackson waited too long. *See United States v. Mitchell*, 31 F.3d 628, 633 n.3 (8th Cir. 1994).

V.

We accordingly affirm the judgment of the district court.

_____