# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1284

_____

Rodrick LeGrand,                             *
                                             *
            Appellant,                       *
                                             *    Appeal from the United States
      v.                                     *    District Court for the
                                             *    Eastern District of Missouri.
Area Resources for Community and             *
Human Services,                              *
                                             *
            Appellee.                        *

_____

Submitted: November 15, 2004
Filed: January 20, 2005

_____

Before RILEY, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

_____

RILEY, Circuit Judge.

Rodrick LeGrand (LeGrand) appeals the district court's[1] grant of summary judgment in favor of Area Resources for Community and Human Services (ARCHS) on LeGrand's sexual harassment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.010-213.137. We affirm.

_____

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

## I.    BACKGROUND

ARCHS, a non-profit organization, implemented the Sustainable Neighborhood Initiative (Initiative), which sought to revitalize local communities through citizen and neighborhood-driven planning.  LeGrand worked for ARCHS as a neighborhood facilitator, and he served the Covenant-Blu, Grand Center, and Vandeventer, Missouri communities.  As a neighborhood facilitator, LeGrand worked with residents and community leaders to plan development of the community.  LeGrand's responsibilities included organizing a Neighborhood Leadership Team, which generated ideas to improve the neighborhood and provided direction to LeGrand to facilitate such ideas.

LeGrand's direct supervisors were Initiative Coordinators Lisa Potts (Potts) and Lucille Walton (Walton).  The Initiative's program included a Personnel Committee, which utilized community members to evaluate ARCHS's employees' performance.  The Personnel Committee advised Potts and Walton regarding employment matters, but Potts and Walton had the final authority to hire, fire, and discipline ARCHS's employees.

Father Maurice Nutt's (Father Nutt) parish was located within the Covenant-Blu, Grand Center, and Vandeventer communities. Father Nutt was an ARCHS board member and a co-chair of the Initiative.  As an ARCHS board member, Father Nutt consulted and advised Potts and Walton on neighborhood issues.  However, Father Nutt was not a member of the Personnel Committee, and he did not make any decisions or any recommendations regarding employment matters.

LeGrand alleges Father Nutt made unwelcome sexual advances toward him on three separate occasions.  The first incident allegedly occurred on March 22, 2001, when LeGrand visited Father Nutt's church to give Father Nutt a community update. After Father Nutt gave LeGrand a tour of the facilities and introduced LeGrand to some of the church's staff members, LeGrand claims Father Nutt asked LeGrand to watch pornographic movies with him and "to jerk off with him" to relieve stress.

LeGrand responded, "No, I'm not interested. I'm not gay. I'm married. I [don't] get down like that." In April, LeGrand reported the incident to Potts and Walton, who told LeGrand to document the incident in writing, which LeGrand did. A few weeks later, Potts and Walton suggested LeGrand seek counseling through ARCHS's Employee Assistance Program (EAP). LeGrand met with an EAP counselor in May 2001.

After the first incident, LeGrand tried to avoid Father Nutt. However, in November, LeGrand encountered Father Nutt at the ARCHS office after Father Nutt had a meeting with Potts and Walton. LeGrand contends Father Nutt (1) mentioned the pornographic movies again; (2) suggested LeGrand would advance in the company, if he watched "these flicks" and "jerk[ed Father Nutt's] dick off"; (3) "kissed [LeGrand] in the mouth"; (4) grabbed LeGrand's buttocks; and (5) "reached for [LeGrand's] genitals." LeGrand pushed Father Nutt in the chest and said, "You motherfucker." Father Nutt later admitted hugging and kissing LeGrand, but Father Nutt believed the "peck on the lips" was "mutual." Father Nutt also admitted to "brush[ing LeGrand's] crotch with the back of my hand [, . . . b]ecause it seemed that [LeGrand] was stimulated by the hug." The third incident allegedly occurred in December, when Father Nutt briefly gripped LeGrand's thigh while each were seated at a table during a meeting at the ARCHS office.

ARCHS maintains a sexual harassment policy, which is contained in its employee handbook. When LeGrand was employed by ARCHS, he received a copy of the employee handbook and was aware of the policy. The handbook's "No-Harassment Policy" states an employee should complain to his immediate supervisor, and if the employee is not satisfied with the supervisor's response, the employee should contact the Human Resources Manager. LeGrand did not contact the Human Resources Manager regarding his allegations against Father Nutt.

On December 21, LeGrand filed a sexual harassment charge against ARCHS with the Equal Employment Opportunity Commission (EEOC). After filing his

EEOC charge, LeGrand visited an EAP counselor five times over the following six months. In January 2002, LeGrand took medical leave from ARCHS. While LeGrand was on medical leave, ARCHS eliminated all neighborhood facilitator positions, including LeGrand's position, due to a lack of funding. In August, ARCHS offered LeGrand the opportunity to interview for the Community Development Coordinator position, which LeGrand declined because he had accepted a position with more pay at another organization.

In February 2002, after the EEOC investigated LeGrand's harassment charge, ARCHS requested and received Father Nutt's resignation from its Board of Directors. ARCHS also disciplined both Potts and Walton for not following ARCHS's "No Harassment Policy."

LeGrand later sued ARCHS in federal court, claiming Father Nutt's sexual advances constituted *quid pro quo* sexual harassment and created a hostile work environment. The district court ruled LeGrand's *quid pro quo* sexual harassment claim failed, because LeGrand did not establish he was subjected to tangible employment action resulting from his refusal to submit to Father Nutt's advances. The district court also rejected LeGrand's hostile work environment claim, because (1) Father Nutt was not LeGrand's supervisor; (2) Father Nutt was not LeGrand's co-worker; and (3) the harassment "was not so severe or pervasive as to alter a term, condition, or privilege of LeGrand's employment."

On appeal, LeGrand challenges the district court's conclusion that (1) Father Nutt was not LeGrand's supervisor, and (2) Father Nutt's conduct was not so severe or pervasive as to constitute actionable sexual harassment. LeGrand does not appeal the district court's grant of summary judgment on his *quid pro quo* sexual harassment claim.

## II.   DISCUSSION

We review de novo a district court's grant of summary judgment. Schoolhouse, Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002). When considering a motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party. Id. Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c). We analyze LeGrand's hostile work environment claims under both Title VII and the MHRA in the same manner. Weyers v. Lear Operations Corp., 359 F.3d 1049, 1056 n.6 (8th Cir. 2004).

In granting summary judgment to ARCHS, the district court determined Father Nutt was neither LeGrand's supervisor nor LeGrand's co-worker. Because we conclude LeGrand failed to establish a prima facie case of hostile work environment sexual harassment, we do not address whether Father Nutt was LeGrand's supervisor or co-worker.

To establish a prima facie case of hostile work environment sexual harassment, LeGrand must prove (1) he is a member of a protected group, (2) he was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, and (4) the harassment affected a term, condition, or privilege of his employment. Tuggle v. Mangan, 348 F.3d 714, 720 (8th Cir. 2003) (citing Duncan v. Gen. Motors Corp., 300 F.3d 928, 933 (8th Cir. 2002)). Assuming LeGrand established the first three elements, we will focus only on the fourth element. To meet his burden on the fourth element, LeGrand "must demonstrate the unwelcome harassment was sufficiently severe or pervasive as to affect a term, condition, or privilege of employment by creating an objectively hostile or abusive environment." Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 993 (8th Cir. 2003).

"Sexual harassment 'standards are demanding–to be actionable, conduct must be extreme and not merely rude or unpleasant.'" Tuggle, 348 F.3d at 720 (quoting

-5-

Alagna v. Smithville R-II Sch. Dist., 324 F.3d 975, 980 (8th Cir. 2003)). "'More than a few isolated incidents are required,' and the alleged harassment must be 'so intimidating, offensive, or hostile that it poisoned the work environment.'" Id. (quoting Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir. 1999)). LeGrand must prove his workplace was "permeated with discriminatory intimidation, ridicule, and insult." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). We consider the "totality of the circumstances" to determine whether a work environment is hostile or abusive. Baker v. John Morrell & Co., 382 F.3d 816, 828 (8th Cir. 2004). We look to a number of factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

Compared to other cases in which the Supreme Court and our circuit have found the harassing conduct did not constitute sexual harassment, we believe the harassment alleged in this case did not create an actionable hostile work environment. In Duncan, we determined the plaintiff failed to show the harassing conduct was "sufficiently severe or pervasive so as to alter the conditions of her employment, a failure that dooms [her] hostile work environment claim." Duncan, 300 F.3d at 935. In Duncan, we considered five harassing incidents: a proposition for a relationship; improper touching of the plaintiff's hand on multiple occasions; a request the plaintiff sketch a sexually objectionable planter; the posting of a "Man Hater's Club" poster; and a request the plaintiff "type the He-Men Women Haters beliefs." Id. at 933-34. The alleged harasser also had in his office a child's pacifier in the shape of a penis and a computer screen saver with a picture of a naked woman. Id. at 931. While the harassment made the plaintiff uncomfortable and was "boorish, chauvinistic, and decidedly immature," we held it did not meet the standard necessary to be actionable. Id. at 935. Thus, in overturning a jury verdict and concluding the district court improperly denied the defendant's post-trial motion for judgment as a matter of law, we held the plaintiff did not show a sufficiently hostile work environment. Id.

-6-

Following <u>Duncan</u>, we have found summary judgment proper in several cases, due to the plaintiff's failure to meet the fourth element of a hostile environment sexual harassment claim.  <u>See</u>, <u>e.g.</u>, <u>Tuggle</u>, 348 F.3d at 714, 722 (holding while the plaintiff "was clearly subjected to harassing conduct," it was not "actionable conduct" where a co-worker made a number of comments based on the plaintiff's sex and posted a photograph showing the plaintiff's "clothed rear end"); <u>Ottman v. City of Independence</u>, 341 F.3d 751, 760 (8th Cir. 2003) (concluding the district court erred in finding a triable issue for the jury where the conduct consisted of belittling and sexist remarks on almost a daily basis); <u>Meriwether</u>, 326 F.3d at 993 (holding sexual harassment claim failed where a co-worker grabbed the plaintiff's buttock and then confronted her about it the next day); <u>Alagna</u>, 324 F.3d at 977-78, 980 (concluding the co-worker's conduct was inappropriate, but not sufficiently severe or pervasive where it included calls to the plaintiff's home, frequent visits to her office, discussions about relationships (not including sexual details) with his wife and other women, touching the plaintiff's arm, saying he "loved" her and she was "very special," placing romance novels in her faculty mailbox, and invading her personal space).

Viewing LeGrand's claim in light of the demanding standard set by the Supreme Court and by <u>Duncan</u> and its progeny, Father Nutt's behavior did not rise to the level of actionable hostile work environment sexual harassment.  None of the incidents was physically violent or overtly threatening.  There can be no doubt Father Nutt's actions, admitted and alleged, ranged from crass to churlish and were manifestly inappropriate; however, the three isolated incidents, which occurred over a nine-month period, were not so severe or pervasive as to poison LeGrand's work environment.  Therefore, we hold LeGrand failed to establish the existence of a trial-worthy question of fact on his hostile work environment claim.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of ARCHS.

_____