**Beverly S. LEICHLITER, Plaintiff,**

v.

**THE DES MOINES REGISTER,
Defendant.**

No. 4:08–cv–0065–JAJ.

United States District Court,
S.D. Iowa,
Central Division.

May 26, 2009.

Robert A. Wright, Jr., Wright & Wright, Des Moines, IA, for Plaintiff.

Karin A. Johnson, Angela J. Morales, Michael A. Giudicessi, Faegre & Benson LLP, Des Moines, IA, for Defendant.

## ORDER

JOHN A. JARVEY, District Judge.

This matter comes before the court pursuant to defendant's February 20, 2009 motion for summary judgment (dkt. 33). Plaintiff resisted defendant's motion for

summary judgment on May 1, 2009 (dkt. 50, 51). On May 22, 2009, the defendant filed its reply brief (dkt. 54).

The plaintiff, Beverly Leichliter ("Leichliter"), claims that the defendant (her former employer), The Des Moines Register, discriminated against her based on her age, and harassed her on the basis of her gender in violation of the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, and the Iowa Civil Rights Act (ICRA), codified at Iowa Code Chapter 216. Leichliter also claims that she was terminated in retaliation for complaining about the harassing behavior. Defendant moves for summary judgment on all of Leichliter's claims. As set forth below, defendant's motion for summary judgment is granted.

## SUMMARY JUDGMENT

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Kegel v. Runnels*, 793 F.2d 924, 926 (8th Cir.1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which it will bear the burden of proof at trial, there are genuine issues of material fact." *Noll v. Petrovsky*, 828 F.2d 461, 462 (8th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.' " *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prod., Inc. v. Herrick*, 715 F.2d 1267, 1272 (8th Cir.1983)).

The nonmoving party is entitled to all reasonable inferences that can be drawn from the evidence without resort to speculation. *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1110 (8th Cir.2001). The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Id.* Although it has been stated that summary judgment should seldom be granted in employment discrimination cases, summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case. *Helfter v. UPS, Inc.*, 115 F.3d 613, 615–16 (8th Cir.1997). The standard for the plaintiff to survive summary judgment requires only that the plaintiff adduce enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence did not directly contradict or disprove defendant's articulated reasons for its actions. *O'Bryan v. KTIV Television*, 64 F.3d 1188, 1192 (8th Cir.1995). To avoid summary judgment, the plaintiff's evidence must show that the stated reasons were not the real reasons for the plaintiff's discharge and that gender, age, or other prohibited discrimination was the real reason for the plaintiff's discharge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting the district court's jury instructions).

## STATEMENT OF MATERIAL FACTS[1]

Leichliter's employment with the defendant was terminated on September 28, 2006. At that time, she was 47 years old. Leichliter was an at-will employee. Between 1998 and the date of her termination, Leichliter worked as a Senior Credit Specialist in defendant's Credit Department. Leichliter's position was a lead role in the Credit Department and was minimally to moderately supervised. In 2000, Curtis Gage became Leichliter's supervisor.

Leichliter's job as a Senior Credit Specialist involved credit investigation and collection and her duties included evaluating the complexity of credit requests and determining credit worthiness based on data, establishing credit limits and/or credit privileges after analysis of credit history, communicating with customers to resolve problems and negotiate payment schedules for delinquent accounts, responding to internal and external credit inquiries, assisting the Credit Manager with reporting and special projects, and processing payments for accounts. It was Leichliter's responsibility to collect past-due accounts, minimize write-offs, and attempt to determine why a customer was unable to pay its bill. Balances on accounts were not to be adjusted or written off absent a justifiable reason for doing so.

In certain circumstances, customer accounts balances could be adjusted with finance charge credits and agency discounts. For example, finance charges may be written off when the entire balance owed on an account is comprised solely of finance charges. Credit department employees must first check the billing system and confirm that the entire amount owed is, in fact, finance charges, before they may such an adjustment.

With respect to agency discounts, advertising agencies placing advertisements with the defendant often received a discount from the billed rate. Initially, they are billed in the system at the full rate, and then adjustments were made to the account to reduce the amount owed as a result of the agency discount. Adjustments for agency discounts were only to be made in the amount of discount actually owed, and were not to be used to simply clear a balance. Adjustments for agency discounts were not to be made unless and until the account had been researched in the billing system and it was confirmed that the agency discount is owed, the amount of the discount, and that the discount had not already been applied to the account.

On or about August 16, 2006, Curtis Gage, Leichliter's boss, noticed several serious and improper adjustment forms that Leichliter had submitted, including improper finance charge credits and using agency discounts to clear accounts. When Gage researched the accounts further, he confirmed that several of the adjustments on the forms submitted by Leichliter on August 16, 2006 were improper. Gage sent an e-mail to Leichliter about the improper adjustments that same day. Leichliter responded on August 22, 2006, admitting "There are some errors on the adjustment sheets that I turned in." Leichliter further stated, with respect to

1. Where genuinely disputed, the material facts are set forth in the light most favorable to Leichliter as the nonmoving party. However, the court notes Fed.R.Civ.P. 56(e), which requires that affidavits supporting and opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify about the matters stated herein. Moreover, many of the facts Leichliter argues preclude summary judgment either were not material or were not supported by competent evidence, and are not included here.

one particular account "I don't even know why I submitted an adjustments [sic]." And, "I have had so many accounts where they were not receiving the agency discount, that I just got caught up in it."

Gage spoke to Harvey (defendant's Controller at the time) regarding Leichliter's August 16, 2006 adjustment forms. Harvey reviewed the adjustment forms herself. Gage and Harvey determined that Leichliter's past adjustments should be reviewed to determine whether there was a pattern of improper adjustments. At Harvey's instruction, Gage contacted Susan Decker in Human Resources regarding this matter. Gage randomly reviewed computer reports dating back to 2002 of finance charge credits and agency discounts authorized by Leichliter from December 2005 to present. Gage then spoke to Harvey regarding Leichliter's past adjustments. Harvey and Gage concluded that Leichliter had used unauthorized finance charge credits to clear account balances when the balance owed was not finance charges, and that Leichliter had written off as finance charges amounts that exceeded the amount of finance charges that had actually been charged to the account. The investigation further revealed that Leichliter had given agency discounts to customers who were not even advertising agencies, and had used agency discounts to clear account balances rather than contacting those customers regarding their outstanding balances. In total, Gage and Harvey concluded that at least $10,000 had been "written off" improperly by Leichliter.

Gage and Harvey concluded that Leichliter's employment should be terminated. Gage and Harvey met with Susan Genalo, defendant's Vice President of Finance, to discuss their findings. Genalo considered Leichliter's adjustments and concurred in the decision to terminate Leichliter's employment. Harvey instructed Gage to inform the Human Resources department that they had concluded that Leichliter's employment should be terminated. Gage then spoke to Decker in Human Resources about their findings. Harvey, Decker, and Gage then met with Joyce Ray, defendant's Vice President of Human Resources, to discuss their findings regarding Leichliter's adjustments. Ray asked Harvey and Gage to have a review performed of the adjustments of other employees in the Credit Department to determine whether other employees had made similar errors. Such a review was conducted but no improper adjustments were found. Harvey, Decker, Gage and Ray met again, during which meeting Ray was advised that a review had been performed and no errors from other employees were discovered. Ray reviewed the records concerning Leichliter's adjustments. Ray approved the decision to terminate Leichliter's employment.

Defendant's conduct policy, which Leichliter admits receiving, states that "Willful falsification of any record . . . may result in disciplinary action up to and including dismissal." It further states that "unsatisfactory work performance for any reason . . . may result in disciplinary action up to and including dismissal."

On September 28, 2006, Gage, Harvey, and Decker met with Leichliter, wherein Leichliter was notified that her employment was being terminated. During this meeting Leichliter stated that she got "caught up in the moment and start[ed] writing things down" and that she had a lot of things going on at home during the past year. However, Harvey pointed out that the improper adjustments extended well beyond the period of just the preceding year.

On October 3, 2006, Decker met with Leichliter for her exit interview. Leichli-

ter testified that she does not believe that Decker or Harvey did anything discriminatory toward her. Leichliter testified that she believes that Gage "got rid of me so that [Bousley–Herman] could be promoted," although she has no evidence to support her "feel[ing]" in this regard. Leichliter further testified:

Q: So you're saying that they used [improper adjustments] to terminate you, but now in your lawsuit you say that was pretext for discriminating against you because of your age.

A: Yes. I think Curtis wanted to give Val [Bousley–Herman] my job ... So he had to get rid of me so that she could be promoted.

Q: Do you have any documents or information that would back up this belief of yours?

A: No. It's just the way I feel.

Q: It's your sense of things?

A: It's my sense of things, correct.

Q: But you have no information, no facts to support that?

A: No. Only her saying that she could do everybody's job.

Neither Gage nor any supervisory employee has ever made remarks about Leichliter's age. Each of her supervisors were around her same age at the time of her termination (Gage was same age, Harvey was two years younger, and Genalo and Ray were both ten years older than Leichliter). Leichliter admitted during her deposition that the defendant was "a place that often promoted people who were over 40" and "it was not a place that discriminated against people because of their age."

Leichliter testified as follows with respect to her sex discrimination claim:

Q: Would the same also hold true for— in paragraph 7 when you say that the stated reason for terminating your em-

ployment was a pretext for discriminating against you because of your sex, you also don't have any documents—

A: Correct.

Q: You don't have any information to show that sex was the real reason?

A: Correct.

Q: In fact, the person who took your duties after you left was also a woman; is that right?

A: Correct.

* * *

Q: [D]o you have anything that says he was doing this other than your suspicion because of your sex?

A: No.

Leichliter admitted in her deposition that the "Register was a place that often promoted women" and that "it was not a place that discriminated against women because of their sex." When asked during her deposition whether she had any documents that would demonstrate that the August 16, 2006 Adjustment Forms were created as a pretext to terminate her on the basis of her age, sex, or in retaliation for bringing a prior complaint about Bousley–Herman or anyone else, Leichliter testified, "No. I don't have any documents, except that some of these codes were wrong." Following Leichliter's exit interview, Decker contacted Harvey and told her that Leichliter had stated during the exit interview that the code in the system for agency discounts was wrong. Harvey looked into the matter and concluded that the incorrect code did not affect their findings with respect to the adjustments Leichliter had made.

Leichliter testified that she did not feel that she should have been terminated because the adjustments on her August 16, 2006 form were never ultimately posted to the customers' accounts because Gage caught the errors. However, Leichliter

admits that the adjustments on her August 16, 2006 form were not accurate and correct, and that she was not performing the required duties of her job when she submitted those forms with so many errors. Leichliter alleges that a woman named Lola made errors and was not terminated, as did Bousley–Herman and Gage. Leichliter has no evidence as to whether the alleged errors were comparable to hers.

With respect to her sexual harassment claim, Leichliter relies on the following comments:

1. Bousley–Herman used "crude language" when talking to customers and co-workers.

2. Bousley–Herman called Leichliter a "bitch" on one occasion.

3. Bousley–Herman called Leichliter a "whore" on one occasion on September 27, 2006, which was after the investigation into Leichliter's adjustments was concluded and the decision had already been made to terminate her employment.

4. Bousley–Herman, when talking to her husband on the phone, said "you're acting like Bev or now you sound just like Bev."

5. Bousley–Herman told Leichliter that she was an unfit mother because Leichliter smoked cigarettes in front of her kids.

6. Bousley–Herman told Leichliter that she "had the least responsibilities of anybody in the department," that Leichliter was incapable and/or that Leichliter did "less work than everybody in the whole department."

7. Bousley–Herman said on one occasion "what is Bev's fucking problem? She's miserable and so she wants to make everybody else miserable."

8. Bousley–Herman sometimes used the word "snatch" at work.

9. Bousley–Herman stated that she was Gage's girlfriend. However, Leichliter never saw Gage and Bousley–Herman together outside the workplace, did not ask Gage if he was in a relationship with Bousley–Herman, and has no independent verification that she was Gage's girlfriend other than her speculation that this was the reason why Bousley–Herman "got away" with "stuff" and was given Leichliter' job after her termination.

Leichliter additionally claims that in 2003 Bousley–Herman asked Leichliter and former employee Sara Flow if they were lesbians. Leichliter admitted that she uses the words "bitch" and "whore" in everyday speech, but not at work. Leichliter and Bousley–Herman carpooled to work for approximately one year after Leichliter's car "blew up." During this time Bousley–Herman used words such as "bitch" and "whore" but Leichliter never told Bousley–Herman that she did not like to hear those words.

Leichliter testified that Bousley–Herman's comments did not impact her ability to perform her job, did not cause her emotional distress or loss of sleep, and that she never saw a doctor, minister, counselor, physician, or psychologist in response to Bousley–Herman's actions, and never took any medication. During her employment with the defendant, Leichliter did not make a complaint of harassment pursuant to defendant's harassment policy. During her employment, Leichliter did not complain to any manager or Human Resources representative that she felt that Bousley–Herman was sexually harassing her. Leichliter complained to Gage about Bousley–Herman's conduct, but never told Gage that she felt that Bousley–Herman's conduct was based on her sex or age. Leichliter did not tell Decker during her

exit interview that she felt her termination was the result of discrimination or retaliation.

## CONCLUSIONS OF LAW

### Age Discrimination

Leichliter does not contend, and the record does not demonstrate, that she has any direct proof that her employment with the defendant was terminated because of her age. Thus, the court will apply the *McDonnell Douglas* burden-shifting analysis in considering defendant's motion for summary judgment with respect to her age discrimination claim.[2] In order to prevail on her age discrimination claim, Leichliter must first be able to establish a prima facie case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Upon establishing a prima facie case, the burden then shifts to the defendant to produce evidence that Leichliter was terminated for a "legitimate, non-discriminatory reason." *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If the defendant satisfies its burden in this respect, the presumption of discrimination raised by Leichliter's proof of a prima facie case ceases to exist and Leichliter must demonstrate by a preponderance of the evidence that the defendant's reasons for her termination were a pretext for age discrimination. *Id.* at 143, 120 S.Ct. 2097. To establish pretext, Leichliter must present evidence that "considered in its entirety (1) create[s] a fact issue as to whether [the defendant's] proffered reasons are pretextual *and* (2) create[s] a reasonable inference that age

was a determinative factor in the adverse employment decision." *Thomas v. Corwin,* 483 F.3d 516, 529 (8th Cir.2007) (emphasis in original) (internal quotations omitted).

 The defendant concedes, for purposes of summary judgment only, that Leichliter could establish a prima facie case of age discrimination. However, defendant argues that summary judgment is warranted nonetheless as substantial evidence in the record supports its nondiscriminatory reason for Leichliter's termination, i.e., she was terminated because the defendant concluded that she had made a substantial number of very serious and improper adjustments to client accounts which resulted in significant financial losses for the defendant.

Leichliter claims that she has generated a material fact issue on pretext in that she has proffered evidence that Bousley–Herman was engaged in conduct with Gage which showed Gage was interested in Bousley–Herman having Leichliter's job and Gage used and orchestrated the situation to give Bousley–Herman Leichliter's job. As such, Leichliter argues, a reasonable fact-finder could conclude that Gage's favoritism of Bousley–Herman was the real reason behind the defendant's decision to terminate her employment. Leichliter further contends that other employees and even Gage himself made numerous and repeated adjustment errors, yet she was the only employee terminated.

The defendant's motion for summary judgment on Leichliter's age discrimination claim is granted. First, Leichliter's theory that her employment was terminat-

---

**2.** *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Further, as the analysis of a state law discrimination claim under the ICRA is the same as that for a federal claim under the

ADEA, the court will cite federal discrimination case law as controlling authority. *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.,* 444 F.3d 961, 964 (8th Cir. 2006).

ed because Gage favored Bousley–Herman belies a finding either that the defendant's proffered reason was pretextual, or that her age was a determinative factor in her termination. Assuming that Leichliter's theory is right and Gage sought to have her terminated so that he could give her job to Bousley–Herman, Leichliter has produced no evidence that her age played any role whatsoever in Gage's actions. The mere fact that Bousley–Herman is not a member of the protected class and Leichliter is, is not enough. Moreover, Leichliter admits that no supervisor ever made an age-related remark and concedes that the defendant often promoted people who were over 40.

Leichliter does not deny that the adjustment forms she submitted on August 16, 2006 contained errors. Leichliter does not deny the erroneous adjustments discovered by Gage as part of his subsequent investigation. Rather, Leichliter points to alleged flaws in the defendant's billing system which made it easy to commit such errors and notes that adjustments were subject to several layers of review. None of these "fact issues" preclude summary judgment by demonstrating pretext. Similarly, Leichliter's claim that she was not given time during the termination meeting to review Gage's supporting documentation is not material. Leichliter has since had ample time to review Gage's investigatory documentation and has shed no doubt on defendant's proffered reason for her termination. It was Leichliter's responsibility to perform her job with as few errors as possible, notwithstanding any flaws in the billing system.

Likewise, Leichliter's evidence that she was treated differently than "similarly situated" employees is inadequate. "The test for whether employees are 'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." *Palesch v.*

*Mo. Comm'n on Human Rights,* 233 F.3d 560, 568 (8th Cir.2000) (internal citations omitted). "[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon,* 218 F.3d 915, 918 (8th Cir.2000) (citing *Lynn v. Deaconess Med. Ctr.-W. Campus,* 160 F.3d 484, 487–88 (8th Cir.1998)). In this regard, plaintiffs must present more evidence than their subjective beliefs that their peers had similar performance deficiencies, i.e., "unsubstantiated allegations are insufficient to withstand summary judgment." *Clearwater v. Independent Sch. Dist. No. 166,* 231 F.3d 1122, 1127 (8th Cir.2000).

Aside from her speculative affidavit testimony, there is no evidence in the record that the employees identified by Leichliter as having made comparable errors were, in fact, "similarly situated" to her. There is no evidence that the frequency or magnitude of the errors is the same. Further, two of the employees Leichliter identifies are her same age. In short, there is no evidence from which a reasonable juror could find in Leichliter's favor on her age discrimination claim. Summary judgment is appropriate.

### Hostile Environment

Defendant argues that it is entitled to summary judgment on Leichliter's gender discrimination claim because her allegations of a hostile environment cannot constitute the prima facie elements of her wrongful termination claim since it is undisputed that Bousley–Herman's alleged harassment did not cause Leichliter's termination, it is undisputed that Bousley–Herman played no role in the defendant's decision to terminate Leichliter's employment, and the alleged conduct of Bousley–

Herman did not affect Leichliter's ability to do her job.

Leichliter argues against summary judgment, claiming that her summary judgment evidence has demonstrated that Bousley–Herman used improper sexual statements and conduct to create an objectively hostile and abusive work environment. Leichliter further claims that Gage knew about Bousley–Herman's conduct, but refused to stop it.

■■■ "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations and internal quotation marks omitted).

> To establish a prima facie case of hostile work environment sexual harassment, [Leichliter] must prove (1)[s]he is a member of a protected group, (2)[s]he was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, and (4) the harassment affected a term, condition, or privilege of [her] employment.

*LeGrand v. Area Resources for Comm. & Human Servs.*, 394 F.3d 1098, 1101 (8th Cir.2005) (citing *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir.2003) and *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 933 (8th Cir.2002)).

■■■ With respect to the third element, "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris*, 510 U.S. at 25, 114 S.Ct. 367. *See also Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (noting that the plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *"discrimina[tion]* ... because of ... sex." ") (emphasis in original). To satisfy her burden on the fourth element, Leichliter "must demonstrate the unwelcome harassment was sufficiently severe or pervasive as to affect a term, condition, or privilege of employment by creating an objectively hostile or abusive environment." *Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir.2003). To be sufficiently objectively severe or pervasive to be actionable, the environment must be such that a reasonable person in the plaintiff's position, considering "all the circumstances" would find it hostile or abusive. *Oncale*, 523 U.S. at 81, 118 S.Ct. 998 (citing *Harris*, 510 U.S. at 23, 114 S.Ct. 367).

■■■ "Sexual harassment 'standards are demanding—to be actionable, conduct must extreme and not merely rude or unpleasant.' " *Tuggle*, 348 F.3d at 720 (quoting *Alagna v. Smithville R–II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir.2003)). " 'More than a few isolated incidents are required,' and the alleged harassment must be 'so intimidating, offensive, or hostile that it poisoned the work environment.' " *Id.* (quoting *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir.1999)). In so deciding, the court looks to several factors, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonable interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367.

■■■ Considering the totality of the circumstances and comparing this case to the facts in other cases in which the Eighth Circuit Court of Appeals has rejected hos-

tile environment sexual harassment claims, Leichliter has not established a question of material fact as to whether the alleged harassment was either based on sex or sufficiently severe or pervasive as to affect a term, condition, or privilege of employment. *Cottrill v. MFA, Inc.*, 443 F.3d 629, 636 (8th Cir.2006). *See LeGrand*, 394 F.3d at 1100–03 (finding no objectively hostile work environment created by defendant's unwelcome sexual advances on three separate occasions over a nine-month period, including asking the employee to watch pornographic movies with him, hugging and kissing, and grabbing the employee's buttocks and thigh); *Tuggle*, 348 F.3d at 722 (holding no actionable hostile work environment based on defendant's inappropriate sexual comments, taking a photograph of plaintiff's rear end and giving plaintiff undesirable work assignments); and *Duncan*, 300 F.3d at 933 (holding no actionable hostile work environment where co-employee asked plaintiff if she would have a relationship with him, touched the plaintiff's hand on four to five occasions, requested that the plaintiff sketch a sexually objectionable planter, asked plaintiff to complete a task on his computer where its screen saver depicted a naked woman, hung an offensive poster, and asked plaintiff to type a document for him containing sexually offensive items).

The alleged harassment endured by Leichliter was infrequent, involved no physically threatening or humiliating conduct, but rather were occasional offensive words, and Leichliter has provided no evidence that the alleged harassment interfered in any manner with her work performance.[3] Summary judgment on

Leichliter's hostile environment sexual harassment claim is warranted.

### Retaliation

■ Title VII prohibits an employer from discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3. To establish a prima facie case of retaliation, Leichliter must show that: "(1) [s]he engaged in protected conduct by either opposing an action of discrimination made unlawful by Title VII or participating in an investigation under Title VII; (2)[s]he suffered an adverse employment action; and (3) the adverse action was causally linked to the protected conduct." *Singletary v. Mo. Dept. of Corr.*, 423 F.3d 886, 892 (8th Cir.2005).

Under the *McDonnell Douglas* burden shifting analysis, which applies in this case because Leichliter has provided no direct evidence of retaliation, if the prima facie case is met, the burden then shifts to the defendant to produce a "legitimate, non-retaliatory reason for the action it took against the plaintiff." *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir.2005) (quoting *EEOC v. Kohler Co.*, 335 F.3d 766, 772 (8th Cir.2003)). If the defendant satisfies its burden, the plaintiff is "then obligated to present evidence that (1) created a question of fact as to whether [defendant's] reason was pretextual and (2) creates a reasonable inference that [the defendant] acted in retaliation." *Id.* (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir.2002)). *See also Thomas v. Corwin*, 483 F.3d 516, 531 (8th

3. On this topic Leichliter testified:

Q: How did this impact your ability to complete your job?

A: It didn't impact. I mean, I was able to do my job, but I was just upset that I didn't feel I should have to sit there and have people call me names.

Cir.2007) ("To prove a causal connection, [plaintiff] must demonstrate that the defendants' 'retaliatory motive played a part in the adverse employment action' ") (quoting *Kipp v. Mo. Highway & Transp. Comm'n,* 280 F.3d 893, 896–97 (8th Cir. 2002)). *See also Griffith v. City of Des Moines,* 387 F.3d 733, 738 (8th Cir.2004) (noting the long-established rule that more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation).

■ With respect to the first element, Leichliter testified that she complained to Gage and others about Bousley–Herman's workplace behavior. Thus, while the court has found that such behavior is certainly unprofessional and inappropriate, but not actionable, the court assumes without deciding that Leichliter engaged in protected conduct. It is undisputed that Leichliter suffered an adverse employment action. However, with respect to the third element, Leichliter has produced no evidence demonstrating a causal connection between the termination of her employment and her complaints about Bousley–Herman's behavior. Leichliter should "receive the benefit of all reasonable inferences that can be drawn from the evidence, but only if those inferences can be drawn 'without resort to speculation.' " *Riley v. Lance, Inc.,* 518 F.3d 996, 1001 (8th Cir. 2008) (quoting *Johnson v. Ready Mixed Concrete Co.,* 424 F.3d 806, 810 (8th Cir. 2005)).

Leichliter's proffered evidence that, in 2003, a painter overheard Gage tell Genalo that Leichliter was a trouble-maker and he wanted to get rid of her is, at most, a stray remark. "Stray remarks" are "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 276–77, 109 S.Ct. 1775,

104 L.Ed.2d 268 (1989) (O'Connor, J., concurring). The Eighth Circuit Court of Appeals has defined direct evidence as "conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude ... sufficient to permit the factfinder to find that that attitude was more likely than not a motivating factor in the employer's decision." *Browning v. President Riverboat Casino–Missouri, Inc.,* 139 F.3d 631, 634–35 (8th Cir. 1998) (quotations omitted). Comments demonstrating a discriminatory animus in the decisional process, or those uttered by individuals closely involved in the decisionmaking process may constitute direct evidence as defined by *Price Waterhouse.* *Beshears v. Communications Servs., Inc.,* 930 F.2d 1348, 1354 (8th Cir.1991). Assuming Gage did, in fact, refer to Leichliter generically as a "trouble-maker" on one occasion, three years prior to her termination, does not demonstrate that Leichliter's complaints about Bousley–Herman were causally related to her termination.

Upon the foregoing,

**IT IS ORDERED** that the defendant's motion for summary judgment (docket number 31) is granted. The Clerk of Court shall enter judgment in favor of the defendant and against the plaintiff on all claims and dismiss this case with prejudice.