# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-3527
_____

Katrina Beran,

*Plaintiff - Appellee,*

v.

VSL North Platte Court LLC,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the District of Nebraska - North Platte
_____

Submitted: November 19, 2024
Filed: July 17, 2025
_____

Before COLLOTON, Chief Judge, BENTON and KELLY, Circuit Judges.
_____

COLLOTON, Chief Judge.

This appeal follows a jury verdict in favor of Katrina Beran in her action alleging sex discrimination by a former employer. A jury found the employer liable for subjecting Beran to a hostile work environment based on her sex. The jury

awarded compensatory and punitive damages. The district court[1] denied the employer's post-trial motions and granted Beran's motion for attorney's fees. The employer appeals, and we affirm.

## I.

We recite the facts in the light most favorable to the jury's verdict. In March 2019, Beran was hired to work as a certified nursing assistant at Linden Court, a skilled nursing facility. Linden Court is owned by the defendant, VSL North Platte Court, LLC, and we will refer to the appellant as Linden Court.

In December 2019, Linden Court hired Christopher Eugene as another certified nursing assistant. Early in his tenure, Eugene walked by the nurses' station while Beran was speaking with a nurse, remarked that "all women are crybabies." He also made repeated comments about wanting to touch one "good-looking" female nursing assistant "any chance he would get." Another female nursing assistant reported that Eugene groped her crotch and buttocks and made derogatory remarks about women.

On January 20, 2020, supervisors reprimanded Eugene for poor performance. The reprimand letter referred to requests from female residents that Eugene not assist with their personal care, and admonished him for "complaining" and "being negative towards other staff members."

Supervisors moved Eugene within the facility from Dogwood Hall to Ash Hall around January 18 due to complaints from female residents at Dogwood Hall. In Ash Hall, Eugene worked alongside Beran.

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

Soon thereafter, Eugene began a pattern of verbal and physical misconduct targeted at Beran. On Saturday, January 25, Eugene groped Beran's buttocks while she was bent over preparing food for residents. On January 26, Eugene assailed Beran again while she was transferring a resident from a bed to a wheelchair. As Beran positioned the resident on a lift, Eugene told her to stop because she was not capable of performing the task as a woman. When Beran declined to discontinue the assistance, Eugene pushed her against a wall, grabbed her breasts with both hands, and held her in that position while he told her that she was incapable of doing her job.

Because administrators were not present on the weekend, Beran was unable to report Eugene's misconduct immediately. Beran believed that she had no choice but to remain in the room and care for the resident. While she made the resident's bed, Eugene grabbed her hand and ignored Beran's repeated requests that he let it go. Beran eventually freed her hand by jerking it away. Beran felt degraded and belittled by the incident.

Beran reported for work the next day, Monday, January 27, and was again scheduled to work with Eugene in Ash Hall. That morning, Eugene refused to help Beran and a co-worker deliver breakfast trays to residents. In response to Beran's request for assistance, Eugene responded that she "needed to cool [her] hormones and pull the rag out." Beran interpreted the statement as a reference to a tampon.

Beran approached the facility's assistant director of nursing, Marianne Harless, in tears and feeling hurt, scared, anxious, and depressed about the situation. She reported Eugene's misconduct over the weekend and that morning. Harless did not address Beran's allegations of misconduct and instead suggested that Beran was "just stressed out from . . . the hardship of being short staffed." Beran responded that she was upset by Eugene's harassment, not by the workload. She asked to be transferred to Dogwood Hall to avoid working with Eugene. Harless reiterated her view that

-3-

Beran was stressed by the workload at Ash Hall but allowed Beran to transfer to Dogwood Hall.

Eugene's harassment of Beran continued after her transfer to Dogwood Hall. On the afternoon of January 27, Beran went to the cafeteria to retrieve lunch trays, and Eugene blocked her access to the galley. Eugene moved only slightly after Beran made five requests. As Beran squeezed past him, Eugene elbowed her hard in the chest.

Beran then approached the facility's director of nursing, Jasmine Moore. Beran cried, reported the elbowing incident, and recounted Eugene's harassment and assault over the weekend. Moore responded that she had already discussed the situation with Harless and suggested that Beran was "making a bigger deal out of it than it was." Moore told Beran that she would talk to Harless and start an investigation. But Beran described Moore as "very nonchalant" and believed that Moore did not consider the issue a priority. Beran testified that Moore and Harless gave her "the cold shoulder" after she complained.

No supervisor conducted a thorough investigation into whether Eugene sexually assaulted and harassed Beran. After Beran made her reports, Moore thought Eugene had no "physical intent to harm at all," and that Beran was just "upset [Eugene] didn't acknowledge her and they weren't getting along." Moore conducted a brief investigation. She spoke with Harless, Eugene, and two other employees about Eugene's work performance. She inquired generally whether he had disagreements with co-workers or made inappropriate physical contacts.

On January 28, 2020, supervisors drafted a "crucial conversation" document addressed to Eugene. The document reprimanded Eugene for making co-workers "feel uncomfortable" by asking questions "about marital status" and admonished him to "avoid conversations of a personal or gender specific nature." Supervisors issued

the crucial conversation document on January 30, after Eugene returned from a day off work. Although supervisors required Eugene to sign a previous reprimand letter, he did not review or sign the "crucial conversation" document on January 30.

On Wednesday, January 29, Beran saw Eugene at the facility, staring at her while she worked at Dogwood Hall. Beran turned and walked away to avoid confrontation. Eugene was not supposed to be at work that day and had been reassigned away from Dogwood Hall due to resident complaints. Later that day, Moore overheard Beran telling another female co-worker what had happened. Moore interrupted the conversation and warned Beran against discussing Eugene's conduct "because they had other females coming forward to report him with similar findings." Beran heard from other nursing assistants that they reported Eugene's misconduct, but neither Beran nor the other complainants received a response from the administration regarding their complaints.

Beran did not work on January 30, February 1, or February 2. On February 6, a resident complained to Beran that Eugene had entered her room and forced her to go into the bathroom. As the resident shared this information, Eugene walked by and exclaimed that the resident had directed a racial epithet at him, and Eugene shouted the epithet down the hall. Beran reported this incident to the facility administrator. The next day, Harless terminated Beran for allegedly "targeting" Eugene by making a "false" report about Eugene's use of profanity.

After Beran's termination, in April 2020, Eugene was reprimanded for inappropriately touching other co-workers by brushing up against them and groping them. In June 2020, Linden Court terminated Eugene for using "disrespectful and inappropriate profanity towards a resident" and moving a resident against his wishes.

As a result of Eugene's harassment, Beran experienced a resurgence of severe post-traumatic stress disorder, including anxiety attacks. Beran had suffered from

this condition several years earlier after she was raped at age 16. In the aftermath of Eugene's harassment, she had difficulty leaving her bed, getting dressed, or socializing. When Beran eventually found a new job, she developed irrational fears about communicating with male co-workers and avoided conversing with them or asking for their help when needed.

Beran brought this suit under Title VII of the Civil Rights Act and the Nebraska Fair Employment Practice Act, alleging a sexually hostile work environment. *See* 42 U.S.C. § 2000e-2; Neb. Rev. Stat. § 48-1004. The district court denied Linden Court's motion for summary judgment, and the case proceeded to trial. Before the case was submitted to the jury, Linden Court moved for judgment as a matter of law; the district court reserved ruling. *See* Fed. R. Civ. P. 50(a). The jury found in Beran's favor and awarded $500,000 in compensatory damages for emotional distress and $2,500,000 in punitive damages. The district court then denied Linden Court's motion, reduced Beran's punitive damage award to $200,000 based on the applicable statutory cap, *see* 42 U.S.C. § 1981a(b)(3), and allocated the compensatory damage award to Beran's claim under Nebraska law. The district court awarded Beran $95,665.80 in attorney fees and $904 in costs. Linden Court renewed its motion for judgment as a matter of law and moved for a new trial. *See* Fed. R. Civ. P. 50, 59. The court denied both motions, and Linden Court appeals.

II.

Linden Court maintains that it was entitled to judgment as a matter of law. The company asserts that there is insufficient evidence of a sexually hostile work environment, and that even if there were such an environment, the employer took prompt remedial action in response to Beran's complaints. Linden Court also asserts that there is insufficient evidence to support a finding that the company acted with malice or reckless indifference as required to justify an award of punitive damages. We review the denial of a Rule 50 motion *de novo*, viewing the evidence in the light

most favorable to Beran, and drawing all reasonable inferences and resolving conflicts in her favor. *Liberty Mut. Fire Ins. Co. v. Scott*, 486 F.3d 418, 422 (8th Cir. 2007).

In assessing whether the harassment experienced by Beran created a hostile work environment, we assess "the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with [Beran's] work performance." *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 420 (8th Cir. 2010) (internal quotation omitted). The harassment must be "sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment." *Hairston v. Wormuth*, 6 F.4th 834, 841 (8th Cir. 2021) (internal quotation omitted).

A jury reasonably could have found that Beran was subjected to sexual harassment, consisting of both offensive utterances and physical misconduct, over three full-time shifts. Eugene groped her buttocks, pushed her up against a wall while grabbing her breasts with both hands, grasped her hand and refused to let go despite repeated requests, and elbowed her chest. We cannot disagree with the district court that "the evidence that Eugene shoved Beran against a wall and groped her breasts was a single incident of sufficient seriousness to submit the case to a jury." *See Hairston*, 6 F.4th at 841. The additional conduct fortified the jury's finding.

The harassment in this case is more severe than conduct in prior cases on which Linden Court relies. In *Watson v. Heartland Health Laboratories, Inc.*, 790 F.3d 856 (8th Cir. 2015), the alleged harassment included "a sexual touching, a single racial slur, four sexually degrading slurs, and a threat" over ten working days. *Id.* at 862. In affirming a grant of summary judgment for the employer, this court noted the "brief" duration of the harassment. *Id.* Because the employee worked only "for a couple of hours a day" and "her interactions with [the harasser] lasted mere seconds,"

she was "not subject to [the alleged harasser's] conduct throughout her workday." *Id.* In *LeGrand v. Area Resources for Community and Human Services*, 394 F.3d 1098 (8th Cir. 2005), the plaintiff alleged unwelcome sexual advances (with no physical violence or threat) on three isolated occasions over a nine-month period. *Id.* at 1100, 1102. This court ruled that these sporadic incidents "were not so severe or pervasive as to poison [the plaintiff's] work environment." *Id.* at 1103. By contrast, Beran experienced multiple, physically violent incidents and verbal harassment, which "poisoned" and "permeated" her working environment over a concentrated period. *See Hairston*, 6 F.4th at 841 (citations omitted).

A reasonable jury also could have found that Linden Court's response did not constitute a "prompt remedial action" that was "reasonably calculated" to stop Eugene's offending conduct. *See Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 699 (8th Cir. 2021). Four considerations support the conclusion that Linden Court did not take effective remedial action.

First, Beran's supervisors, Harless and Moore, denied that Beran reported Eugene's sexual harassment. These denials conflict with Beran's testimony and could have been deemed false by a jury. False denials are consistent with Beran's account that supervisors "undermined" her complaints about sexual harassment and suggested that she was merely "stressed out" from the demands of her job.

Second, the "crucial conversation" that Linden Court conducted with Eugene on January 30, 2020, did not address his sexual harassment of Beran. The company reprimanded Eugene only for demonstrating "negativity" toward colleagues, asking inappropriate personal questions of a gender-specific nature, and failing to perform job duties. The letter did not address Eugene's assault of Beran or his demeaning comments about women.

Third, Linden Court previously had made two disciplinary communications to Eugene with no apparent effect. After Beran's complaint, the administration simply repeated the approach that had proven ineffective and produced similar results. Eugene continued to grope female co-workers through April 2020 and was terminated shortly thereafter.

Fourth, Linden Court failed to notify Beran of the "crucial conversation" with Eugene or update her regarding the resolution of complaints. *See Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 931 (8th Cir. 2010) ("The jury could reasonably find that [defendant] did not take [plaintiff]'s complaints seriously, given its repeated failure to keep her apprised of its response or to follow through on its stated intentions."). Instead, there was evidence to support a finding that supervisors gave her the "cold shoulder" and closed their office doors as she walked past them.

Linden Court contends that it took effective remedial action because Eugene's harassing behavior stopped after Beran moved to work in Dogwood Hall and Moore had a "crucial conversation" with Eugene. But Eugene harassed and intimidated Beran twice after her transfer to Dogwood Hall. And Linden Court's "crucial conversation" with Eugene did not even address the sexual misconduct at issue. Linden Court terminated Beran on February 7, and Eugene continued to harass other female employees. Therefore, the evidence sufficiently supports the jury's finding that Linden Court did not take prompt and appropriate remedial action that was reasonably calculated to end the harassment.

There was also sufficient evidence to support the jury's award of punitive damages. "Title VII allows punitive awards in the narrow class of cases where the employer acts with malice or reckless indifference to the federally protected rights of the employee." *Rowe v. Hussmann Corp.*, 381 F.3d 775, 783 (8th Cir. 2004) (internal quotation omitted). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law." *Kolstad v.*

*Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). "This standard does not require egregious misconduct." *Rowe*, 381 F.3d at 783. We have ruled that an employer acted with reckless indifference where it responded to serious employee allegations "in a half-heartened manner," conducted an inadequate investigation, and threatened an employee with possible termination. *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 616, 619 (8th Cir. 2000).

The evidence described above could have led a reasonable juror to conclude that Linden Court made so little effort to respond to Beran's complaints as to establish reckless disregard of her right to be free of harassment. A jury could have found that Beran's "repeated complaints to supervisors" fell "on deaf ears," *see Rowe*, 381 F.3d at 783, that supervisors "downplayed" Eugene's sexual harassment by attributing Beran's complaints to her workload, *see Henderson*, 217 F.3d at 619, and that supervisors made a "half-hearted" response and took no "meaningful action" to discipline Eugene. *See id.*; *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 796 (8th Cir. 2004).

## II.

Linden Court next argues that the award of compensatory damages for Beran's emotional distress is excessive and should be remitted or the subject of a new trial. We review the denial of a remittitur for abuse of discretion, recognizing that the district court "has heard the evidence and knows the community's standards." *Mathieu v. Gopher News Co.*, 273 F.3d 769, 782-83 (8th Cir. 2001) (internal quotation omitted). We afford latitude to juries and tolerate "disparities among juries as to what constitutes adequate compensation for certain types of pain and suffering." *Vanskike v. Union Pac. R.R. Co.*, 725 F.2d 1146, 1150 (8th Cir. 1984) (internal quotation omitted).

-10-

The district court allocated the compensatory damage award to Beran's claim under the Nebraska statute, so state law guides our inquiry into whether the award is excessive. *See Sanford v. Crittenden Mem'l Hosp.*, 141 F.3d 882, 884 (8th Cir. 1998); *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 137 (2d Cir. 2008). The district court reviewed this question under federal law, but Linden Court does not claim prejudice and acknowledges that the standard is "substantially similar" under both federal and Nebraska law. Linden Court relies on both state and federal decisions to support its argument.

Nebraska law deems an award excessive where it is "so clearly against the weight and reasonableness of the evidence and so disproportionate as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record, or that the jury disregarded the evidence or rules of law." *Shipler v. Gen. Motors Corp.*, 710 N.W.2d 807, 840 (Neb. 2006). An award will be sustained if it is supported by the evidence and "bears a reasonable relationship to the elements of the damages proved." *Funk v. Lincoln-Lancaster Cnty. Crime Stoppers, Inc.*, 885 N.W.2d 1, 13 (Neb. 2016). Given that an amount of "damages for pain, suffering, and emotional distress inherently eludes exact valuation," the plaintiff is "simply required to offer sufficient proof of damages so that the jury could reach its award without awarding an uncertain, speculative recovery." *Roth v. Wiese*, 716 N.W.2d 419, 436 (Neb. 2006).

On compensatory damages, the jury was instructed to determine an amount for "emotional pain, suffering, mental anguish, stress, worry, humiliation, fear, apprehension, anxiety, inconvenience, and loss of enjoyment of life" that was "a direct result of sexual harassment." The jury's award was supported by evidence of Beran's emotional distress. Eugene's sexual harassment caused Beran to experience "severe PTSD," which required treatment by psychiatric medication and led Beran to have difficulty getting out of bed, seeing friends, and leaving her house. She experienced flashbacks, and suffered from anxiety, depression, and paranoia that

interfered with her ability to interact with male co-workers in future employment. The evidence regarding Beran's mental health disorder is sufficient proof to support the jury's award.

The jury's award of $500,000 also falls within a reasonable range compared to other jury awards. In 2006, the Nebraska Supreme Court upheld an award of $150,000 after a plaintiff received a letter and three voice messages that caused her to relive the emotional trauma of multiple sexual assaults during her childhood. *Id.* Although Beran's damages are greater, the award came almost twenty years after *Roth*. The award also could reasonably reflect the jury's estimation of additional emotional trauma that Beran experienced when required to work with Eugene in an environment of ongoing harassment. This court has upheld an emotional distress award of $500,000 for a plaintiff who suffered from an anxiety disorder after being sexually harassed by a coworker. *Rowe*, 381 F.3d at 783-84. While another jury might reasonably have assessed damages differently, the award chosen was not so disproportionate as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record.

\*      \*      \*

The judgment of the district court is affirmed.

_____